**ROMA TOOL & PLASTICS, INC., a Minnesota corporation, Plaintiff,**

v.

**BATTENFELD OF AMERICA, INC. and Battenfeld Berges Duroplasttechnik GmbH, Defendants.**

Civ. No. 4–86–287.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 27, 1989.

Thomas L. Hamlin, Arthur S. Beeman and Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for plaintiff.

Jerry W. Snider, Steven L. Severson and Faegre & Benson, Minneapolis, Minn., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the Court on defendants' motion for partial summary judgment. Based upon the record, file and proceedings herein, and for the reasons stated below, the Court denies defendants' motion.

## FACTUAL BACKGROUND

Plaintiff Roma Tool & Plastics, Inc. ("Roma") is a Minnesota corporation having its principal place of business in Elk River, Minnesota. Roma is engaged in the business of manufacturing and selling plastic goods and materials. Defendant Battenfeld of America, Inc. ("Battenfeld of America"), is a Rhode Island corporation having its principal place of business in West Warwick, Rhode Island. Battenfeld of America is in the business of selling, installing and servicing machinery for use in the plastics industry. Defendant Battenfeld Berges Duroplasttechnik GmbH ("Battenfeld Berges") is a limited liability business entity organized and existing under the laws of the Federal Republic of Germany (West Germany) and has its principal place of business in Meinerhagen, West Germany. Battenfeld Berges is engaged in the business of designing, engineering, manufacturing and servicing machinery for use in the plastics industry. Battenfeld of America purchases plastic molding machinery manufactured by Battenfeld Berges and other companies and resells that machinery to customers in the United States.

Roma commenced this action on April 8, 1986. Roma's Second Amended Complaint contains seven counts including breach of express warranty (Count I), implied warranty (Count II), contract (Count III),

wrongful rejection of revocation of acceptance (Count IV), fraudulent and negligent misrepresentation (Counts V and VI), and wrongful interference with contract (Count VII). Roma seeks five million dollars in damages, which includes consequential damages alleged to have occurred as a result of defendants' wrongful acts.

Defendants' motion requests the Court to dismiss Count II of plaintiff's Complaint based on language in a purported written contract between the parties which effectively excludes all implied warranties. The motion also requests the Court to enforce other provisions of that contract, including a choice of Rhode Island law provision, limitation of remedies provision, and, significantly, a provision stating that defendants shall not pay incidental or consequential damages caused by a breach of the contract. In effect, defendants' motion, if granted, would reduce plaintiff's claim from about three million dollars on Counts I–IV, to about $390,000 for repair, replacement or refund of the purchase price of two machines, the subject of the agreement.

The parties have provided the Court with affidavits, depositions and exhibits which describe the development of their relationship and shed some light on the nature of their respective understandings of the terms of their agreement. According to the record as presently constituted, it appears that the first communication between the parties regarding the transaction now in dispute occurred on August 3, 1983. (Supplemental Affidavit of Thomas W. Betts, Exh. A). That communication was Quotation No. 8308/1026/MN in which Battenfeld of America (then called Battenfeld Gloucester Engineering Co.) submitted a "formal proposal" for the sale of Battenfeld Berges automatic compression presses ("machines") at a price of $164,900 per machine. The proposal included the machine, certain standard features, and a warranty which was referred to in the letter of proposal as being enclosed and entitled "conditions of sale". The record now before the Court does not include a copy of the enclosed "conditions of sale".

On August 25, 1983, Roma signed a three-year contract with Armour Food Company to produce 30,000,000 plastic dishes which could be heated in either a microwave or conventional oven. To meet the terms of this contract, Roma met with Battenfeld representatives in August of 1983, and told them that the Armour contract called for Roma to produce 10,000,000 dishes per year over a three-year period. (Affidavit of Milo Hennemann). Roma told Battenfeld that it wanted two fully automatic machines, with each machine capable of producing six dishes every twenty-five seconds. *Id.* Roma had previously determined that a twenty-five second production cycle was critical to a profitable operation. *Id.* Roma also told Battenfeld that another order from Armour to produce 50,000,000 dishes per year would be coming once Roma was in full production. To meet this demand, Roma told Battenfeld it planned to purchase as many as eight more machines. *Id.*

According to Roma, Battenfeld expressly assured Roma that it could meet all conditions. *Id.* Battenfeld had indicated at the meeting with Roma that a machine with only one preplasticizer (a device designed to feed raw plastic to the mold) could not supply raw material fast enough to meet Roma's production requirements, and recommended that each machine be equipped with a second preplasticizer to increase production speed. This recommendation was the critical factor in persuading Roma to purchase the Battenfeld machines. *Id.*

On September 9, 1983, Battenfeld sent an "updated proposal" to Roma incorporating changes that resulted from the parties' discussions. The proposal stated that the machine would include two stuffers and preplasticizers (instead of one) and a specially designed loading tray and discharge/positioning mechanism. (Supplemental Affidavit of Thomas W. Betts, Exh. B). The price quoted earlier was increased to $186,900 per machine and again the proposal referred to an enclosed "conditions of sale" which has not been provided to the Court.

By a letter dated October 26, 1983, Battenfeld confirmed a "special offer" of

$170,000 each for purchase of two of the machines identified in the September 9, 1983 proposal. Roma ordered two of the machines on October 26, 1983, at the price of $170,000 per machine on its order form No. 7231 which contained its understanding of the terms of the contract. There were no provisions in this form regarding choice of law, limitation of remedies, or warranties.

On November 16, 1983, Battenfeld of America (still called Battenfeld Gloucester Engineering Co.) sent Roma an order acknowledgement. This order acknowledgement contained the following terms relevant to the present motion:

Highlighted on the front of the acknowledgement form was the following language:

Acceptance of the order of the Buyer named on the face hereof ("Buyer") expressly is made conditional on Buyer's assent to the Terms and Conditions on the reverse hereof and Gloucester Engineering Co., Inc. ("Seller") agrees to furnish the Articles described herein only upon those Terms and Conditions."

On the back of the acknowledgement form the following relevant terms were printed:

\*　\*　\*　\*　\*　\*

(1) *Acceptance.* Shipment by Seller and acceptance or payment by Buyer for all or any of the Articles covered by this Sales Order (the "Articles" shall constitute acceptance by Buyer of this Sales Order and all the terms hereof). Prior to acceptance by Buyer, Seller may withdraw or modify this Sales Order.

(2) *Full Agreement.* The agreement between Seller and Buyer (the "Sales Contract") with respect to the Articles shall consist of the terms and conditions contained herein together with any additions to or revisions of such terms mutually agreed to in writing by Seller and Buyer.

\*　\*　\*　\*　\*　\*

(3) *Modification.* Except as provided herein, the terms of the Sales Contract may not be modified, terminated or repudiated, in whole or in part, except by a writing signed by Seller and Buyer.

\*　\*　\*　\*　\*　\*

(7) *Warranty.* Unless provided to the contrary on the Sales Order, Seller warrants that the Articles delivered under this Sales Contract shall be fit for the ordinary purposes for which such Articles are used.

This warranty shall not apply to any Articles which (1) has been altered outside Seller's factory in any way so as, in Seller's judgment, to affect such Articles' reliability; (2) has been subject to misuse, negligence or accident; or (3) has been used other than in accordance with any printed instructions prepared by Seller and provided by Seller with the article.

THE WARRANTY GIVEN IN THIS SECTION IS EXCLUSIVE. THE Seller DOES NOT WARRANT MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, OR MAKE ANY OTHER WARRANTY OR AGREEMENT EXPRESS OR IMPLIED WITH RESPECT TO ANY Articles DELIVERED UNDER THE Sales Contract. IF ANY MODEL OR SAMPLE WAS SHOWN TO Buyer, SUCH MODEL OR SAMPLE WAS USED MERELY TO ILLUSTRATE THE ARTICLE AND NOT TO REPRESENT THAT ANY ARTICLE DELIVERED HEREUNDER WOULD CONFORM TO THE MODEL OR SAMPLE.

(8) *Seller's Exclusive Obligations.* Seller's obligations with respect to any Articles delivered to Buyer under the Sales Contract are limited exclusively to Seller's choice of repair, replacement or refund of purchase price of any Articles or parts thereof which shall be returned to Seller promptly after delivery by the Buyer in the manner set forth in this clause, in which Seller's examination shall disclose to its satisfaction not to have conformed

to the contract or to have been defective as specified in the warranty clause.

All such Articles shall be returned to Seller's place of shipment freight prepaid, accompanied or proceeded by a particularized statement of the claimed defect or nonconformity.

\* \* \* \* \* \*

The remedy provided in this section is the exclusive remedy for Buyer under the Sales Contract. Seller shall not be responsible for incidental or consequential damages caused by Articles delivered under this Sales Contract.

\* \* \* \* \* \*

(10) *Applicable Law.* This Sales Contract shall be governed by the laws of the Commonwealth of Massachusetts.

On December 13, 1983, Battenfeld sent a letter confirming a telephone conversation with Roma. In the letter, Battenfeld confirmed a requested modification to the ejection system of the machine, which was to cost an additional $3,385 per machine. Battenfeld also confirmed in the letter the recommended use of temperature control units which would cost an additional $4,630 per machine. On December 30, 1983, Battenfeld sent Roma another letter confirming another telephone conversation. In this letter, Battenfeld confirmed a conversation regarding "deflashing unit[s]" for use in conjunction with the machines. The units would cost an additional $16,600 for each machine. The letter also requested that Roma confirm the conversation "and the verbal go-ahead regarding this", in writing. It also noted that Battenfeld had initiated "the previous changes and additions" (presumably referring to the December 13, 1983 letter) for which it awaited Roma's confirmation. Roma responded by letter on January 12, 1984. The letter confirmed the telephone conversations regarding "add on features" of Roma's "existing order" for the two machines. It also referenced Battenfeld's December 13 and 30, 1983 letters, repeated their material content with respect to parts and pricing, and stated that it's letter was written approval of the additions and pricing.

Finally, on January 13, 1984, Battenfeld sent Roma a second cover letter and change order acknowledgement form. The form contained the same terms as the November 14, 1983 form except that Battenfeld had changed its name to Battenfeld of America, the additions confirmed in the December 13 and 30, 1983 and January 12, 1984 letters were added and article 10 on the back side was changed to state that "this Sales Contract shall be governed by the laws of the State of Rhode Island."

It is significant to note that during the course of these negotiations, at least as it appears from the uncontradicted affidavit of Roma's president, Milo Hennemann, the parties never discussed either: (1) a choice of law provision for interpreting the sales contract between Roma Tool and Battenfeld; or (2) a provision in the sales contract limiting remedies and barring consequential damages.

(Affidavit of Milo Hennemann at 4).

Battenfeld proceeded to ship the machines and parts to Roma and Roma has accepted and used them. According to Roma, the machines have not worked as warranted resulting in the loss of the Armour contract and other business, which losses amount to more than three million dollars.

## ANALYSIS

Rule 56(b), Fed.R.Civ.P., provides that "[a] party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the parties' favor as to all or any part thereof." Rule 56(c) states, in pertinent part, that "[j]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Defendants base their motion for partial summary judgment on the provisions of the final January 13, 1984 customer acknowledgement form. According to defendants,

that form contains all of the terms of the contract between the parties. In particular, defendants rely on Article 10, the Rhode Island choice of law provision, Article 7, the warranty provision, and Article 8, the limitation of remedy provision.

## I. Applicability of the Rhode Island Choice of Law Provision

In a diversity case, such as the instant case, the Court must apply the choice of law principles of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Carlson v. Tandy Computer Leasing,* 803 F.2d 391, 393 (8th Cir.1986) ("In order to determine the applicable law in this action, we look to the choice of law rules of the forum state"). Because the transaction in dispute in this case involves the sale of goods (*see* Minn.Stat. § 336.2–105 (1986)), the Uniform Commercial Code applies. Minnesota's Uniform Commercial Code choice of law rule provides in pertinent part:

> when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this chapter applies to transactions bearing an appropriate relation to this state.

Minn.Stat. § 336.1–105(1) (1986).

There are two requirements which must be met before the Court is bound to apply Rhode Island law to this case:

(1) The transaction in question must bear a reasonable relation to this state and also to another state (Rhode Island in this case); and

(2) The parties must have agreed that the law either of this state or such other

state (again, Rhode Island in this case) will apply.

*Id.; see Held v. Mitsubishi Aircraft Intern., Inc.,* 672 F.Supp. 369, 374 (D.Minn. 1987) (finding both an agreement and reasonable relation); *Northern States Power v. Intern. Tel. & Tel. Corp.,* 550 F.Supp. 108, 112–113 (D.Minn.1982) (finding neither an agreement nor a reasonable relation); *Industrial Graphics, Inc. v. Asahi Corp.,* 485 F.Supp. 793, 797 n. 2 (D.Minn.1980) (finding waiver of any possible right to have Japanese law apply and no intention of the parties to have it apply); *see also* Nordstrom and Ramerman, *The Uniform Commercial Code and the Choice of Law,* 3 U.C.C.L.J. 230, 237–238 (1970) ("the court must not abdicate its task of determining whether the parties have *agreed* "). Minnesota courts are committed to honoring agreements between parties as to choice of law. *Milliken and Co. v. Eagle Packaging Co.,* 295 N.W.2d 377, 380 n. 1 (Minn.1980); *Combined Ins. Co. of America v. Bode,* 247 Minn. 458, 77 N.W.2d 533, 536 (1956).

Although this Court has found no case on point, the Court holds that the question of whether the parties agreed to the Rhode Island choice of law provision in the January 13, 1984 customer acknowledgement form, for purposes of Minn.Stat. § 336.1–105, is governed by the contract formation principles contained in Minn.Stat. § 336.2–207.[1] *See* Nordstrom and Ramerman, *The Uniform Commercial Code and The Choice of Law,* 3 U.C.C.L.J. 230, 237–238 (1970) ("the [choice of law] clause must have been fairly enough obtained so that it ought to become a part of the total legal obligations of the parties, a determination which calls into play the doctrines of contract formation ... by which all provisions of an agreement are tested").

Minnesota Statutes § 336.2–207 (1986) provides:

---

**1.** The parties have taken contrary positions on whether they agreed to the Rhode Island choice of law provision. Defendants assert that they did so agree and cite as their sole basis for this contention a purported stipulation entered into by the parties. Roma vigorously denies having ever so stipulated (during the hearing on defen-

dants' motion) and asserts that it never discussed or agreed to the provision. Neither party has provided the Court with legal authority or analysis to guide the Court in its determination of whether the parties have agreed to the choice of law term of their agreement.

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

*See e.g., Diamond Fruit Growers, Inc. v. Krack Corp.,* 794 F.2d 1440 (9th Cir.1986) (counter-offeror included clauses disclaiming warranties and excluding consequential damages; counter-offeror also orally refused to change clauses upon request; counter-offeree continued to accept goods; counter-offeror's terms did not control); *C. Itoh Co. (America) Inc. v. Jordan International Co.,* 552 F.2d 1228 (7th Cir.1977); *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161 (6th Cir.1972); *Construction Aggregates Corp. v. Hewitt–Robins, Inc.,* 404 F.2d 505 (7th Cir.1968); *Roto–Lith, Ltd. v. F.P. Bartlett & Co.,* 297 F.2d 497 (1st Cir.1962); *Reaction Molding Technologies, Inc. v. General Electric Co.,* 585 F.Supp. 1097 (E.D.Pa.1984); *see generally* J. White & R. Summers, 1 Uniform Commercial Code, § 1–3 (1988). The general purpose of § 2–207 is to allow parties to enforce their agreement despite discrepancies between an oral agreement and a written confirmation, and despite discrepancies between a written offer and a written acceptance. *Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569 (10th Cir.1984).

Neither of the parties recognized that § 2–207 governed the question of what terms should be included in their agreement, thus the facts and arguments provided to the Court in support of or in opposition to defendants' motion were not helpful. The Court has attempted to piece together a satisfactory picture of what occurred so that it could make an appropriate application of § 2–207, however material questions of fact still exist. For example, the facts presented to the Court reveal that defendants sent Roma quotations on August 3, 1983 and September 9, 1983. Copies of the quotations provided the Court specifically reference an enclosed "terms of sale". No "terms of sale" have been provided to the Court. A material question of fact exists as to what those terms are. Accordingly, defendants' motion for summary judgment must be denied.

Defendants assume that the terms the parties agreed to in their contract were all contained in the January 13, 1984 acknowledgement form sent to Roma. Defendants support this position by asserting that Roma has stipulated that the January 13, 1984 acknowledgement form constitutes the parties' contract. Defendants cite the Court to parts of a January 28, 1987 deposition of Roma's president, Milo Hennemann, in which Roma's attorney "simply for purposes of the Complaint", (Deposition of Milo Hennemann at 454), appears to stipulate that "exhibit 10", which was the January 13, 1984 acknowledgement, was the document that Roma referred to in Count III of its Complaint which alleges breach of contract. Other portions of that deposition, however, paint a different picture of what Roma's president thought the contract was: "To me, the contract was, and I'm not a lawyer, that we had a purchase order for two Battenfeld presses from Battenfeld, that we fully expected to operate and produce acceptable parts for our cus-

tomers. And that was the contract." (Deposition of Milo Hennemann at 449). Furthermore, during the hearing on defendants' motion, Roma's attorney vigorously denied having ever stipulated that the January 13, 1984 customer acknowledgement was the contract between the parties.

Defendants also cite paragraph 4 of plaintiff's Complaint as authority for their assumption of contract terms. (Defendants' Memorandum in Support of Motion for Partial Summary Judgment at 4 n. 1). Paragraph 4 does no more than name the defendants collectively as "Battenfeld". *See* Second Amended Complaint at 2. However, paragraph 7 of the Complaint arguably supports defendants' position:

> 7. On November 14, 1983, Roma Tool entered into a contract with Battenfeld whereby Battenfeld agreed to sell and Roma Tool agreed to buy two (2) Battenfeld Berges automatic compression presses.... The contract was subsequently modified to include additional parts to be used in the operation of the Battenfeld presses. True and correct copies of the contract and modification are attached herewith as Group Exhibit "A". [The copies contained in Group Exhibit "A" were the November 14, 1986 customer acknowledgement form, the October 26, 1983 Roma purchase order form, and the January 13, 1984 customer acknowledgement form].

Furthermore, paragraph 29 provides that:

> 29. The contract between Roma Tool and Battenfeld contains the following obligations made by defendant Battenfeld:
> [The Complaint then quotes part of paragraph 8 of the customer acknowledgements].

*Id.* at 7.

Contrary to these allegations, Roma's president stated in his uncontradicted affidavit that before he agreed to buy the machines he never discussed the choice of law provision, limitation of remedies provision or the consequential damages provision.

The Court finds that Roma has not stipulated to all of the terms of the January 13, 1984 acknowledgement form. The Court bases its determination of the agreed to terms on what occurred during the negotiations between the parties, not on the vague, later renounced, stipulations by a party's lawyer more than two years after the negotiations on the contract took place, or on unverified allegations of a complaint which may be amended, *see* Fed.R.Civ.P. 15(a).

Plaintiff's allegations in paragraphs 7 and 29 of the Complaint, quoted above, do not constitute a stipulation that the January 13, 1984 acknowledgement form embodied the terms of the contract between the parties. Paragraph 7 alleges that the contract was entered into "[o]n November 14, 1983", not January 13, 1984. According to the allegation, the January 13, 1984 acknowledgement merely modified the November contract. Interpreting this allegation strictly would render the absurd result that if the November 14, 1983 acknowledgement were the alleged contract, then the purported January 13, 1984 modification would have no effect because it was not *signed* by both parties. *See* paragraph 3 of the November 14, 1983 acknowledgement.

Paragraph 29 of the Complaint alleges a contract term found in both of the acknowledgement forms sent by Battenfeld. Considered in isolation, that fact may appear to constitute an admission that the forms embodied the agreed upon terms of the parties. Paragraph 25 of plaintiff's Complaint, however, alleges that defendants impliedly warranted the machines were fit for their ordinary purpose. That allegation makes no sense if plaintiff admits that defendants' forms contained the terms of the contract, as both forms exclude any implied warranties. A more reasonable interpretation is that those allegations set forth alternative theories of the case. If it is ultimately determined that the acknowledgement forms' terms were agreed upon, then paragraph 29 makes sense. If it is not so determined, then paragraph 7 makes sense. Pleading in the alternative is permitted under the federal rules. *See* Fed.R. Civ.P. 8(e)(2); *see also* C. Wright and A. Miller, 5 *Federal Practice and Procedure,*

§ 1283 (1969) ("courts have permitted plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement ..."). Accordingly, the Court will require more evidence to determine the terms of the parties' agreement.

IT IS HEREBY ORDERED that defendants' motion for partial summary judgment is denied.