## COMBINED INSURANCE COMPANY OF AMERICA v. HENRY A. BODE AND OTHERS.

77 N. W. (2d) 533.

June 8, 1956—No. 36,816.

*Faegre & Benson, John S. Holten, Arrington & Healy,* and *Edmund G. Pabst,* for appellant.

*Samuel G. Smilow,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from an order denying plaintiff's motion for a temporary injunction.

Plaintiff is an Illinois corporation licensed in this state to sell a low-cost accident insurance policy. In 1952, defendant Henry A. Bode became sales manager for plaintiff in a territory roughly designated as that part of Minnesota lying northeasterly and that part thereof lying southwesterly of New Ulm. Defendants Wallace L. Anderson and George H. Dumont were employed by plaintiff as salesmen operating under Bode as sales manager. Defendants were employed under written contracts which, by their terms, became effective upon signature of plaintiff in Chicago, Illinois. The pertinent portions of all contracts are substantially the same except for such modification as was necessary in order to cover the

employment of salesmen rather than sales manager. That portion of the contract which is material to a consideration of the questions raised by this appeal is as follows:

"It is clearly understood and the Sales Manager hereby agrees that the Company owns the business conducted hereunder, including the agency force, Company-approved contracts made with salesmen, all records pertaining to the business conducted hereunder and trade secrets and information pertaining to the Company coming to the knowledge of the Sales Manager while he is acting as such hereunder.

\* \* \* \* \*

"Upon the termination of this Agreement the Sales Manager shall immediately deliver to the Company all books, receipts, certificates, literature, policies, lists of Policyholders, applications and all other forms, papers, documents and memoranda relating to or pertaining to the business produced in the Sales Territory, all of which are hereby agreed to be property of the Company, whether original copies or blanks, and immediately upon such termination the Sales Manager shall have no rights whatsoever with respect to any commissions on policies of insurance or renewals thereof sold hereunder by or through the Company except as provided in Paragraph (19), and the Company shall at that time pay to the Sales Manager the net balance due him at that time, if any.

"The Sales Manager agrees that upon termination of this Agreement he shall not interfere directly or indirectly, or aid or abet others to do so, with the business of the Company, the relations between the Company and any of its district managers, sales managers or salesmen, or interfere with any of the policies or renewals sold for the Company in the Sales Territory under the terms of this Agreement or otherwise, or interfere with the relations between the Company and any Insured or any prospective policyholders with whom the Company has had contact through the Sales Manager or a salesman under the supervision of the Sales Manager before termination of this Agreement. \* \* \*

\* \* \* \* \*

"This Agreement shall not become effective until executed for the Company in Chicago, Illinois by a properly authorized officer after execution by the Sales Manager, and shall be construed according to the laws of the State of Illinois, * * *."

The premiums on the insurance policies sold were collected semiannually by the salesmen or sales manager. When Bode began working for plaintiff, it assigned to him 3,317 semiannual policies theretofore sold in his territory. Upon renewal of these policies, the salesmen and sales manager were paid a commission.

On April 28, 1955, Bode notified plaintiff that he was resigning, effective June 30, 1955. A new manager was assigned to the territory, and on June 20 and July 2, 1955, respectively, Anderson and Dumont also left plaintiff's employment, apparently because of a difference of opinion with the new sales manager.

At about the time that defendants left plaintiff's employ, American Benefit Association filed with the insurance department of this state for approval a form of policy practically identical with the one sold by plaintiff except that the premium was slightly lower. On July 21, 1955, defendants were licensed as agents for American Benefit Association, and they began immediately to sell its policy in the same territory in which they formerly had sold plaintiff's policies. As a result, a goodly number of policies were sold to people who formerly had held plaintiff's policies and it lost the renewal of such policies. Plaintiff thereupon commenced this action. Its complaint, as far as material here, alleges:

"Since July 21, 1955, defendants and each of them have interfered, directly and indirectly, with the business of plaintiff and with its relations with its insureds and with prospective policyholders in the sales territory to which defendants and each of them had been assigned as agents of plaintiff in one or more of the following particulars:

"(1) Systematically soliciting large numbers of plaintiff's policyholders shortly before renewal date to purchase insurance policies issued by American Benefit Association of Minneapolis, which are virtually identical with plaintiff's policies, and selling to many of

said policyholders said policies of American Benefit Association of Minneapolis.

"(2) Inducing and attempting to induce many of such policyholders not to renew their accident insurance policies from plaintiff.

"(3) Misrepresenting to such persons, directly or indirectly, that defendants are representing plaintiff and that the policies being sold by them are plaintiff's policies or that plaintiff was no longer doing business in the territory."

As part of its prayer for relief, plaintiff prays:

"(1) For a temporary injunction restraining defendants and each of them from doing and continuing the activities herein complained of."

The court ordered:

"1. That the defendants and each of them are hereby ordered to return to plaintiff all agent's memos, lists and other books and records, insurance policyholders' name lists or copies thereof or policy renewal lists or copies thereof derived during the course of defendants' employment or representation of the plaintiff company or any other material acquired during that time which would in any way lead to the acquisition of such information now in their possession or under their control.

"2. That the defendants are restrained from making any representations that they are now authorized to act in any capacity whatsoever for the plaintiff in the solicitation of insurance policies or renewal thereof for the plaintiff."

The court refused, however, to grant an injunction restraining defendants from soliciting in the territory in which they formerly had worked. In construing the restrictive covenants contained in the contract between plaintiff and defendants, the court said:

"* * * In its broadest sense, it seems to contemplate a total prohibition against solicitation of plaintiff's policyholders after termination of defendants' employment in the area designated by the agreement. In its narrowest sense, it seems to contemplate a prohibition against the interference with the internal and customer

relations of the company by acts designed to promote injury to the company; for example, misrepresentation by defendants of their present status with the company, false statements of the company's financial condition or of the company's insurance policies; or the enticement of employees from the company; or the fomentation of internal strife within the company by particular acts aimed at that objective."

The court was of the opinion that the contracts did not prohibit solicitation in the territory in which defendants formerly had worked for plaintiff and was of the opinion also that, if the contracts were to be so construed, they were unenforceable insofar as they included a prohibition against solicitation.

While defendants do not deny that they have sold policies to several people who formerly held policies with plaintiff, they claim that they solicited the territory generally and that the sale of such policies of the company which they now represent to those who formerly held policies with plaintiff is merely coincidental. The court was of the opinion that "The high incidence of plaintiff's policyholders becoming policyholders of the company defendants now represent throws some doubt upon this contention of defendants."

The questions presented here are: (1) Does a proper construction of the contract entered into between plaintiff and defendants require a holding that the contract prohibits defendants from soliciting former policyholders of plaintiff for the sale of policies issued by their new employer? (2) If the contract does contain such provision prohibiting solicitation, is such provision enforceable under the facts in this case?

 Plaintiff and defendants, as well as the trial court, have proceeded on the theory that the law of Illinois governs in determining the issues involved in this case.[1] We need go no further than to hold that the law of Illinois governs as to the proper con-

[1]We need not determine whether Larx Co. Inc. v. Nicol, 224 Minn. 1, 28 N. W. (2d) 705, is controlling.

struction of the contract.[2] The place of making is where the last act necessary to give validity to the contract is performed.[3] Here the last act to be performed under the express terms of the contract was the signing of the contract by plaintiff in Chicago, Illinois.

■ We are also committed to the rule that the parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern.[4] Here the parties expressly agreed that the law of Illinois should govern.

■ Under the law of Illinois it is well settled that, in case of ambiguity, a contract should be construed against its author.[5] Minnesota follows the same rule.[6]

■ Contracts in partial restraint of trade will be strictly construed[7] and the restraint extended no further than the language of the contract absolutely requires.[8] It has been said also that it is the duty of the courts to give a reasonable and sensible construction to such contract and, as far as may be, carry out the intention of the parties.[9]

■ The trial court held that the contracts do not expressly prohibit solicitation of plaintiff's policyholders by defendants although, broadly interpreted, they could be so construed.

[2]Schultz v. Howard, 63 Minn. 196, 201, 65 N. W. 363; Thomson-Houston Elec. Co. v. Palmer, 52 Minn. 174, 179, 53 N. W. 1137, 1138; Gossard v. Gossard (10 Cir.) 149 F. (2d) 111; Restatement, Conflict of Laws, § 346; 11 Am. Jur., Conflict of Laws, § 117.

[3]Fitzgerald v. Economic Laboratory, Inc. 216 Minn. 296, 12 N. W. (2d) 621; see, McClintock, *Conflict of Laws as to Contracts*, 13 Minn. L. Rev. 538.

[4]Smith v. Parsons, 55 Minn. 520, 57 N. W. 311; Swedish-American Nat. Bank v. First Nat. Bank, 89 Minn. 98, 94 N. W. 218; see, 10 Minn. L. Rev. 498; 11 Am. Jur., Conflict of Laws, § 119.

[5]Cedar Park Cemetery Assn. v. Village of Calumet Park, 398 Ill. 324, 75 N. E. (2d) 874; Dixon v. Montgomery Ward & Co. Inc. 351 Ill. App. 75, 114 N. E. (2d) 44; 3 Callaghan's Illinois Digest, Contracts, § 313.

[6]Wick v. Murphy, 237 Minn. 447, 54 N. W. (2d) 805.

[7]Tarr v. Stearman, 264 Ill. 110, 105 N. E. 957; United Romanian M. M. & G. Store v. Abramson, 218 Ill. App. 577.

[8]Wiggins Ferry Co. v. Ohio & M. Ry. Co. 72 Ill. 360.

[9]Ryan v. Hamilton, 205 Ill. 191, 68 N. E. 781.

Tested by the above rules of construction, there is ample room for the interpretation placed on the contracts by the trial court. It is quite apparent that these contracts are couched in such general language that they could be construed to mean almost anything. That they are ambiguous can hardly be open to doubt. The first part of these negative covenants, which reads:

"The Sales Manager agrees that upon termination of this Agreement he shall not interfere directly or indirectly, or aid or abet others to do so, with the business of the Company, the relations between the Company and any of its district managers, sales managers or salesmen, * * *"

conceivably could include a prohibition against any competitive solicitation. In fact, it is so general that it could preclude any competition at all. Following this general catchall prohibition is the next clause reading:

"* * * *or* interfere with any of the policies or renewals sold for the Company in the Sales Territory under the terms of this Agreement *or otherwise,* * * *." (Italics supplied.)

Literally construed, the first clause quoted above would surely include the alternative and more specific prohibition following it. The second clause quoted is not limited to interference with policies or renewals sold by defendants, but, by the term "sold for the Company in the Sales Territory under the terms of this Agreement *or otherwise*" (italics supplied), it conceivably could be held to include policies or renewals sold by those who succeeded defendants as well, or even those policies which had been sold prior to the time defendants were engaged by plaintiff. The next clause, which reads:

"* * * or interfere with the relations between the Company and any Insured *or any prospective policyholders* with whom the Company has had contact through the Sales Manager or a salesman under the supervision of the Sales Manager before termination of this Agreement," (italics supplied)

apparently could restrict defendants, not only from contacting policyholders, but from contacting any other person with whom

any salesman of the company at any time has had contact. This language is not limited to defendant salesmen. The term "prospective policyholders" goes much further than "policyholders."

Apparently plaintiff itself has difficulty in determining what it meant by these contracts. In its brief it says:

"* * * it is clear that the parties intended to have a 'restrictive covenant' to allow the Company to keep the renewals or expirations as its own, to require the sales manager or salesman to honor this provision, but not to impose greater limitations on defendants than necessary for this purpose. The contracts do not include out and out restraints on competition because this was not necessary. If the sales manager or salesman, after termination of his contract, whatever the cause, wished to continue as an insurance agent, even as an accident and health insurance agent, there is no objection so long as he does not 'interfere with any of the policies or renewals sold for the Company in the Sales Territory * * * or interfere with the relations between the Company and any Insured or any prospective policyholders with whom the Company has had contact through the Sales Manager. * * *'

"What this language clearly was intended to cover and prevent was calling upon policyholders in the sales territory to induce them to lapse their policies and take out policies with the new company represented by the terminated agent, in other words, the conduct engaged in by defendants in this case."

Plaintiff further says in its brief here:

"* * * it should be remembered that the restrictive covenant in this case is not a general restraint but only a very limited partial restraint. The contracts do not provide, as restrictive covenants often do, that the defendants would not engage in the same or similar type of business. Rather, in essence, the covenant merely provides that the defendants shall not disturb the business of the Company, particularly that with which they had had contact prior to leaving the plaintiff. The covenant was deliberately designed to go no further than necessary in protecting the legitimate interests of the plaintiff."

Plaintiff then says:

"* * * If it is awkward to inquire of a prospect in the restricted area whether he holds a policy with plaintiff, the defendants nevertheless have the further privilege of soliciting persons in the restricted area who do not hold such policies."

The construction placed by plaintiff upon the contract is far from consistent with the language used if it were to be given a literal and broad meaning. Instead of being "deliberately designed to go no further than necessary in protecting the legitimate interests of the plaintiff," it would seem to us that this contract is deliberately drawn so as to be so general that it could be argued that any competitive act done by any former agent of plaintiff was within the terms of the contract and that a construction could be sought which would bring such act within the terms of the contract.

Plaintiff cites, in support of the construction which it now seeks, the case of Colwell v. Union Central L. Ins. Co. 59 N. D. 768, 232 N. W. 10, 88 A. L. R. 409. That case did not involve the questions we now have before us. It involved a contract entered into between the defendant insurance company and the plaintiff, who had acted as a manager or general agent for it. Upon termination, the contract provided for certain renewal commissions and then contained a provision that any such interest shall cease if the agent interferes in any manner with the company business. The agent accepted a position as state manager for a competing company. Thereafter he not only wrote letters to policyholders seeking to have them transfer their business to him as agent for the new company, but he wrote letters to former subagents soliciting them to join him in his new venture. The court held that there was such a violation of this contract that he forfeited his right to the renewal commissions. The case did not involve the question whether he had a right to engage in a competing business. As a matter of fact, all the justices seemed to have agreed that he had such right; the author of the opinion disagreed only as to whether there was a violation of the contract. The case is of no help here.

There is also a practical problem involved here that is almost insurmountable. How defendants could be restrained from solicit-

ing only policyholders of plaintiff in this territory without having a list of those to whom plaintiff had sold policies and without in some manner "interfering" with plaintiff's business, as plaintiff would have us construe that word, has not been explained. In his oral argument here, counsel for plaintiff stated that plaintiff would not furnish defendants with such lists, and it is obvious from its insistence upon defendants' returning to it all records of policy-holders that it would not do so. In fact, the court, by its injunction, compelled the return of all records of such policyholders. The only kind of injunctive relief that would be effective here would be to restrain defendants from soliciting at all in the territory affected. Even plaintiff, by its argument in its brief, claims that the contract did not so intend. To hold that this contract so provides requires a construction which we do not feel obliged to make.

In view of the ambiguity existing in this contract, we are of the opinion that the court went as far as it could in enjoining an alleged breach of the contract. If, as plaintiff now contends, it intended to prohibit solicitation of its policyholders by former salesmen or sales managers, it should have been a simple matter to say so. To allow plaintiff to use language so general and vague in nature as to permit any kind of a construction which it later sees fit to place upon it could well lead to the unconscionable result of imposing upon an employee a restraint which he could not possibly have intended to assume when entering into the contract. It must be kept in mind that, absent an agreement to the contrary, there would be nothing to prevent defendants, under the facts in this case, from engaging in a competitive business. If such competition is to be restrained upon termination of employment, the employer should be held to a strict requirement that it express the same in unambiguous language. We cannot hold that this has been done here.

In view of our conclusion that the court's construction of the contract must be affirmed, we need not discuss the validity of the contract. The cases on this subject are exhaustively collected in Annotation, 41 A. L. R. (2d) 15.

Affirmed.