**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, State Farm Life Insurance Company, State Farm Fire & Casualty Company, State Farm General Insurance Company, Plaintiffs,**

v.

**Robert E. HEDBERG, Defendant.**

**No. 4–64 Civ. 134.**

United States District Court
D. Minnesota,
Fourth Division.

June 29, 1964.

which is one of plaintiffs' competitors and has carried on a studied campaign to obtain for his present insurance company the insurance business of the present policyholders in plaintiffs' companies which he formerly secured and serviced during the years of his employment with the plaintiffs. At times he has used cards which would indicate that he is still connected with the plaintiffs and there are occasions, according to the showing made herein, when he was collecting moneys due plaintiffs and has interfered in diverse ways with plaintiffs' policyholders in direct violation of some of the covenants of his contract. The plaintiffs were unable to recover their records, files, manuals, blank forms, material and supplies from defendant without proceeding against him by way of a replevin action. However, the single question presented to this Court on this motion is whether plaintiffs are entitled to a preliminary injunction restraining defendant for a period of one year from March 2, 1964, from soliciting the insurance business of any present policyholder in plaintiffs' companies which he formerly secured and serviced.

The provision of the contract between the parties upon which plaintiffs rely is Section I–G. It reads:

"* * * Upon termination of this agreement, the Agent shall deliver to the Companies or their authorized representative all such property remaining in the Agent's possession or control and shall thereafter refrain from further solicitation for or servicing of policyholders of the Companies and from interfering in any way for a period of one year with the existing policies and policyholders."

Plaintiffs are mutual companies and the policies they issue are issued directly to the insured by the insurers. The companies bill the policyholders directly each six months for the premiums due. The agent has no authority to cancel the policies and usually does not collect the premiums, at least upon renewal. The procedure of the plaintiffs upon the ter-

Marvin E. Lundquist, of Johanson, Winter, Lundquist & Sherwood, Wheaton, Minn., for plaintiffs.

Joe A. Walters and Robert J. Christianson, Jr., Minneapolis, Minn., for defendant.

NORDBYE, District Judge.

This cause comes before the Court on plaintiffs' application for a preliminary injunction.

Until March 2, 1964, when he was discharged by the plaintiffs, defendant represented the so-called State Farm companies under a written "Local Agent's Appointment". Since March 2, 1964, he has been actively engaged in representing an insurance company

mination of the contract with an agent is to assign the business of the terminated agent in the plaintiff companies to another agent of the company for servicing. The situation is similar to that which Judge Devitt discussed in Hedlund v. Farmers Mutual Life Automobile Ins. Co., D.C., 139 F.Supp. 535, 537, and wherein he considered the difference between an agent of the American Agency System and the Mutual Insurance companies. In a note he quotes from Words and Phrases, Vol. 3, page 474, as to the definition of the American Agency System as follows:

"'* * * [U]pon termination of an insurance agency, if the agent's financial obligations to the insurer are paid in full, all rights in the expiration data of existing insurance procured by the agent, belong to him' in order that the '* * established business of an insurance agent may be preserved to him as far as possible upon the termination of his agency, and to that extent and no further * * *.'"

And in discussing the comparison between the rights of such an agent with the rights of an agent of a mutual company, he stated, page 537,

"The evidence here shows that the contractual relationship between the plaintiff and defendant falls into a different category. The defendant is a mutual insurance company. It is owned by its policyholders. The agent occupies a different position than he does in the traditional stock insurance company-agent-relationship. The policy is issued directly by the insurance company and not by the agent. The agent has no authority to cancel it; he usually does not collect the premiums; the policy is written on a continuous basis, and each 6 months the company bills the insured directly for future premium, and, upon payment, sends a 'continuation certificate' directly to the insured. Upon payment of the renewal premium, the agent receives a renewal commission of from 8 to 10 per cent from the company."

Defendant recognizes that Section I–G is binding upon him, but he contends it is so ambiguous that it cannot be given the meaning which plaintiffs seek to ascribe to it, asserting that "[I]n case of ambiguity a contract should be construed against its author." Combined Insurance Company of America v. Bode, 247 Minn. 458, 77 N.W.2d 533 (1956). He recognizes that under this provision he must refrain from further solicitation of any business for the plaintiff companies and that he must not interfere with any claims or problems which may arise under the policies which, prior to March 2, 1964, he had secured and serviced for the plaintiffs. He strongly contends, however, that the language to the effect that he must not interfere in any way for a period of one year with existing policies or policyholders is so vague and ambiguous that it should be disregarded by this Court.

Defendant relies primarily on the Bode case, supra, where the court refused to enforce certain restrictive covenants in an insurance agent's contract to the effect that former agents of an accident insurance company should be restrained from soliciting insurance for a competing company in the territory in which they had formerly worked for the plaintiff company. The court held that the contracts were "couched in such general language that that they could be construed to mean almost anything." (Page 465, 77 N.W.2d p. 537).

Without attempting to recite the broad and general language of the restrictive covenants in the Bode case which the Minnesota Supreme Court characterized as above stated, it seems evident that the language of the contracts and the relief sought there are readily distinguishable from the restrictive covenant and the narrow and limited relief sought here.

■■ At the outset, it should be recognized that the canon of construction to the effect that an ambiguous covenant in a contract must be construed against

its author, does not mean that language which could have been phrased in more explicit terms should necessarily be cast aside as meaningless. The entire contract should be considered together with any matters *dehors* the contract which may throw light upon the intention of the parties in the usage of the language under consideration. The Court recognizes that the Minnesota decisions control the interpretation to be given to restrictive covenants in a contract, but each case necessarily must depend upon its own facts.

In determining the intent of the parties with reference to the restrictive covenant in question, reference may be made to another section of the contract, to wit, Section IV–B–4. This paragraph which pertains to certain payments made to terminated agents based upon their period earnings and years of service reads:

"Payment to the Agent under the provisions of B may be made in 5 annual installments or less, at the option of the Company, the first payment to be made within 90 days following the date of termination provided all records and files used by the Agent in his representation of the Company and all unused materials and supplies furnished to him by the Company have been surrendered to the Company or its authorized representative and provided the Agent has agreed in writing not to service policyholders of the Company or to compete with the Company or interfere with its business for one full year from the date of termination."

Admittedly, this provision is not applicable here in that defendant did not sign an agreement not to compete with the company for one full year from the date of termination, but this paragraph does tend to strengthen plaintiffs' position that, in using the word "interfering", Section 1–G did not intend to restrict defendant in his competitive efforts in the insurance business after termination except to a limited extent. Certain-

ly, however, the word "interfering" as used in 1–G was intended to restrict the agent's activities as to plaintiffs' existing policies and policyholders in some manner during the year following termination. And in view of the method by which renewals were handled by plaintiffs, it reasonably follows that the "interfering" refers to any interference with plaintiffs' renewals by soliciting them for another company during the period in question. Defendant "interferes" with plaintiffs' outstanding policies of insurance if he seeks to wrest from plaintiffs the renewals of the automobile policies he secured and serviced during his tenure as their agent and which were in force on March 2, 1964. Webster defines the word "interfere" as meaning "to enter into, or take a part in, the concerns of others; to intermeddle." It is fair to conclude that "interfering with the existing policies and policyholders" refers to policies which defendant had secured and serviced during his tenure as agent. In view of the limited rights of an agent in mutual automobile insurance companies, the construction accorded to the term as asserted by plaintiffs seems entirely reasonable.

The exact language in this contract was considered by the District Court of Appeal, First District, California, in State Farm Mutual Automobile Ins. Co. v. Dempster, 174 Cal.App.2d 418, 344 P.2d 821. There, the court referred to Hedlund v. Farmers Mutual Automobile Ins. Co., supra, as outlining the difference between the methods of conducting the insurance business in the sale of State Farm policies and that employed by the so-called American Agency System. And as against the defendant's claim there that Clause I–G was ambiguous and unenforcible, the court stated, 344 P.2d page 824,

"The Agents contend that the language of the contract specifies only that the terminated agent may no longer deal with State Farm as to its policies, not that he cannot solicit a State Farm policyholder as to insurance with another company, and

that the custom of the industry supports this interpretation. The language of the contract, reading, 'Upon termination of this agreement, the Agent shall * * * refrain * * * from interfering in any way for a period of one year with existing policies and policyholders' obviously aims to protect the company at the vulnerable time of renewal of the policy. Policies are not cancelled during the life of the contract but at their termination, and it is to this date that the prohibition against 'further' solicitation or 'interference' must apply."

This statement was in support of the court's earlier comment at the beginning of its decision which reads, page 822,

"An injunction against former agents of an insurance company which prohibited solicitation of policyholders by these agents and use of information obtained in the course of their former relationship does not fail because of ambiguity in the contract of appointment or because of adverse equitable considerations or statutory prohibition."

The Court is fully aware that the author of the provision in question could have used language which would have more clearly and unequivocally stated the restrictions which they now seek to enforce. But the Court should seek to accord the language used a reasonable construction in light of all the circumstances rather than to stamp it as meaningless. In view of the methods which plaintiffs employ in the writing and in the renewal of their policies, it reasonably follows that defendant interferes— within the broad concept of "in any way" —with plaintiffs' existing policies and policyholders when he seeks to utilize the confidential information he has received as plaintiffs' agent in directing the renewals of the policies he secured and serviced into an insurance company which directly competes with the plaintiffs. The restrictive period of one year is reasonable under all the circumstances. The consideration for the covenant is implicit in the contract privileges accorded defendant. That irreparable injury will be sustained by plaintiffs if injunctive relief is not granted seems apparent.

Plaintiffs may present an order to this Court granting injunctive relief consistent with this order, conditioned, however, upon the giving of a bond in the sum of $5,000 according to the terms and provisions of Rule 65, Federal Rules of Civil Procedure. It is so ordered. An exception is allowed to the defendant.