# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 07-2694/2699

———————

| | | |
|---|---|---|
| Dr. Martin Hinz; Neuroresearch Clinics, Inc., | * | |
| | * | |
| | * | |
| Appellants/Cross-Appellees | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Neuroscience, Inc.; Gottfried Kellermann, | * | |
| | * | |
| | * | |
| Appellees/Cross-Appellants. | * | |

———————

Submitted: April 14, 2008
Filed: August 22, 2008

———————

Before GRUENDER, BALDOCK,[1] and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

In this diversity case, Dr. Martin Hinz and Neuroresearch Clinics, Inc. (collectively "Hinz") sued Neuroscience, Inc. and Gottfried Kellermann (collectively "Kellermann") for breach of contract. A jury returned a verdict for Hinz, awarding

———————

[1]The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

$1,989,373 in damages. The district court[2] reversed the damage award on Kellermann's motion for judgment as a matter of law. The court denied Hinz's motions for permanent injunction, pre- and post-judgment interest, and attorney's fees and costs. Hinz appeals. Kellermann cross appeals, claiming the court erred in allowing parol evidence to interpret the contract. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Hinz developed the D5 product series, including D5, D5 Extra, and D5 Mucuna to treat neurotransmitter dysfunction. The primary ingredient in D5 Mucuna was Mucuna pruriens; the primary ingredients in D5 were L-Dopa (from standardized Mucuna pruriens) and 5-HTP.

Hinz and Kellermann reached a Joint Working Agreement on October 14, 2001. The agreement permitted Kellermann to distribute Hinz's products in exchange for paying Hinz a royalty rate of 43 percent per product.

In August 2002, Hinz and Kellermann created Neuroscience, Inc. to develop and sell amino acid supplement products. Neuroscience distributed and marketed Hinz's products, including D5 and D5 Mucuna. Neuroscience agreed to pay Hinz a royalty rate and salary, in addition to business expenses. On November 30, 2002, Kellermann terminated the joint business relationship. Kellermann stayed with Neuroscience, while Hinz started Neuroresearch Clinics, Inc. Within weeks, Neuroscience contacted all the customers in its database to persuade them to stay with it. About 80 percent of the customers were contacts brought to Neuroscience by Hinz, while the remaining 20 percent were contacts Hinz and Kellermann established

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

together. After the split, Neuroscience sold Hinz's products, without paying him a royalty rate.

In January 2003, Kellermann sued Hinz; Hinz countersued. The dispute was settled during a court-mediated settlement conference on May 23, 2003. The settlement was memorialized in a written agreement. As relevant, the agreement, effective September 1, 2003, required Kellermann to:

- "permanently discontinue the promotion, sale and use of the following tradenames, trademarks and products using said tradenames and trademarks: Cysreplete, NeuroReplete, RepleteExtra, D5, D5 Extra, D5 Mucuna, The Replete Program, and L-tyrosine in combination with 5-HTP,"

- "permanently discontinue the promotion, marketing and sale of the D5 product series," and

- "make no further use of any trademarks and amino acid formulations specifically prohibited by this agreement for which [Hinz] had been paid royalties in the past."

Four months later, Hinz sued Kellermann for breach of the settlement agreement, alleging Kellermann was selling products containing the ingredients Mucuna pruriens and Mucuna pruriens in combination with 5-HTP. Before trial, the district court ruled that the settlement agreement was ambiguous on its face. It permitted Hinz and Kellermann to introduce parol evidence to interpret the terms of the contract. The jury found a breach of contract, awarding $1,989,373 in lost-profit damages.

After trial, Kellermann moved for judgment as a matter of law, or alternatively a new trial under Rule 50(b) of the Federal Rules of Civil Procedure. The district court granted judgment as a matter of law on damages, concluding Hinz provided no reasonable basis for the calculation of damages. However, the court denied Kellermann's motion for new trial, ruling it untimely. The court also denied Hinz's motions for permanent injunction, pre- and post-judgment interest, and attorney's fees

and costs.  Hinz appeals, contending the district court erred in (1) reversing the damage award because it lacked jurisdiction; (2) concluding there was insufficient evidence for the damage award; (3) instructing the jury on the measure of damages; and (4) denying Hinz a permanent injunction, pre- and post-judgment interest, and attorney's fees and costs.  Kellermann cross-appeals, objecting to the use of parol evidence.

## II.

Hinz argues Kellermann failed to comply with the "particularity" requirement of Rule 7(b) of the Federal Rules of Civil Procedure in his post-verdict motion.  Hinz thus concludes the district court lacked jurisdiction to enter the amended judgment reversing the damage award.

At the close of evidence, Kellermann moved for judgment as a matter of law, explaining orally the basis for the motion.  *See* **Fed. R. Civ. P. 50(a)**.  Specifically, he disagreed with the use of parol evidence and claimed there was insufficient evidence to prove damages.  Post-verdict, Kellermann renewed his motion, stating simply: "we would like to renew our Rule 50 motion for judgment as a matter of law." *See* **Fed. R. Civ. P. 50(b)**.  Exactly ten days after trial, Kellermann filed motions for judgment as a matter of law, and alternatively a new trial.  *See id.*  The post-verdict motions did not describe the grounds on which they were based.  The next day, however, Kellermann filed a supporting memorandum detailing the grounds for the motions.  Kellermann attacked the verdict, the use of parol evidence, and other "irrelevant and prejudicial" evidence.  The district court ruled that for the issues of damages and parol evidence the motions were timely and stated with particularity. For the issue of irrelevant and prejudicial evidence, the motion was untimely.

Because the dispute involves the legal jurisdiction of the court, this court reviews de novo.  *See* ***Andreas v. Volkswagen of Am., Inc.***, 336 F.3d 789, 793 (8th Cir. 2003).

-4-

"Rule 7 is a general rule that applies to all motions." *Id.* It requires a request for a court order to be made by motion, which shall (1) be in writing, unless made during a hearing or a trial, (2) state with particularity the grounds for seeking the order, and (3) state the relief sought. **Fed. R. Civ. P. 7(b)**. The particularity requirement gives notice to the court and the opposing party, providing the opposing party "a meaningful opportunity to respond and the court with enough information to process the motion correctly." *Andreas*, 336 F.3d at 793. However, the particularity requirement "should not be applied in an overly technical fashion when the purpose behind the rule is not jeopardized." *Id.* The court may consider closely-filed motions to determine if notice was properly given and the opposing party had an opportunity to respond. *See id.* The court may not consider, though, filings after the filing period "because to do so would allow parties to eviscerate the purpose of the time limitation." *Id.* at 794. *See* **Alternate Fuels, Inc. V. Cabanas**, No. 06-3794/07-1462, slip op. at 5-6 (8th Cir. Aug 18, 2008).

Here, the district court looked to the Rule 50(a) motion to determine whether the Rule 50(b) motion was adequate. The court did not consider the supporting memorandum, though, finding it untimely.

As for the supporting memorandum, a renewed (or post-verdict) motion for judgment as a matter of law must be filed "no later than ten days after the entry of judgment." *See* **Fed. R. Civ. P. 50(b)**. Because the supporting memorandum here was filed after the 10-day limit, this court may not consider it. *See Andreas*, 336 F.3d at 794.

As for the district court's consideration of the Rule 50(a) motion, the court did not err. "By definition, a Rule 50(b) motion is a renewal of a prior Rule 50(a) motion made at the close of the evidence and as such is limited to those issues raised in the previous motion." *Id.*, *citing* **Fed. R. Civ. P. 50(b)**; *see also* ***Conesco Fin. Servicing Corp. v. N. Am. Mortgage, Co.***, 381 F.3d 811, 821 (8th Cir. 2004) ("The grounds for the renewed motion under Rule 50(b) are limited to those asserted in the earlier Rule 50(a) motion."). Kellermann's Rule 50(a) motion attacked the use of parol evidence

and the damage evidence. The trial transcript indicates Kellermann made the motion during the trial, particularly stating its grounds and the relief sought. *See* **Fed. R. Civ. P. 7(b)**. Kellerman provided the district court and Hinz with notice, and Hinz had a fair opportunity to respond. Because the Rule 50(a) motion satisfied the particularity requirement, the Rule 50(b) motion was also sufficient. *See* **Andreas**, 336 F.3d at 794; *see also* **Conesco**, 381 F.3d at 821 ("If colloquy between counsel and the trial court fleshes out the motion, it may provide the opposing party with the requisite notice.").

The district court had jurisdiction to enter an amended judgment reversing the damage award.

III.

Applying the same standard as the district court, this court reviews the grant of judgment as a matter of law de novo, viewing the evidence most favorably to the nonmoving party and drawing all reasonable inferences in its favor. **Liberty Mut. Fire Ins. Co. v. Scott**, 486 F.3d 418, 422 (8th Cir. 2007). "If the evidence viewed according to this standard would permit reasonable jurors to differ in the conclusions they draw, judgment as a matter of law cannot be granted." **Id.**, *quoting* **Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co.**, 477 F.3d 583, 593 (8th Cir. 2007). However, "when the record contains no proof beyond speculation to support the verdict, then judgment as a matter of law is appropriate." **Liberty Mut.**, 486 F.3d at 422; **Fed. R. Civ. P. 50(a)(1)**. In a diversity case, this court applies the substantive law of the forum state to determine if this standard was satisfied. **Warren v. State Farm Firm & Cas. Co.**, 531 F.3d 693, 698 (8th Cir. 2008).

To prove damages, Hinz must demonstrate by a preponderance of evidence that: "(a) profits were lost, (b) the loss was directly caused by the breach . . ., and (c) the amount of such causally related loss is capable of calculation with reasonable certainty rather than benevolent speculation." **B & Y Metal Painting, Inc. v. Ball**, 279 N.W.2d 813, 816 (Minn. 1979). "[T]here can be no recovery for damages which are remote,

conjectural, or speculative." ***Jensen v. Duluth Area YMCA***, 688 N.W.2d 574, 579 (Minn. Ct. App. 2004), *quoting* ***Carpenter v. Nelson***, 101 N.W.2d 918, 921 (Minn. 1960). "But damages need not be proved with certainty; it is legally sufficient that a reasonable basis for approximating loss is shown." ***Jensen***, 688 N.W.2d at 579.

Hinz claims he presented sufficient evidence for the damage award, including that (1)Hinz and Kellermann are competitors in a two-player market, (2) Kellermann marketed his products in direct competition with Hinz's, (3) Kellermann's success and sales; and (4) Hinz's sales. Hinz alleges this evidence demonstrates that his profits would have been greater if Kellermann did not breach the contract. Specifically, Hinz insists that from September 2002 to August 2003, before the settlement agreement, he had a 88.2 percent growth rate in actual revenues. For the three years after the settlement agreement, the growth rate was 28.4 percent (September 2003 to August 2004), 10.5 percent (September 2004 to August 2005), and 18.8 percent (September 2005 to August 2006). Hinz concludes he would have maintained a growth rate of 88.2 percent in the three years after the settlement agreement, but for Kellermann's breach.

This evidence, however, is insufficient; it does not provide a reasonable basis for approximating loss. Most importantly, Kellermann was selling products with Mucuna pruriens, even during the September 2002 to August 2003 period, when Hinz realized the 88.2 percent growth rate. Therefore, the declining growth rate was not due to Kellermann's activities alone. How much of the decline is due to Kellermann's activities was left to speculation. *See* ***Polaris Indus. v. Plastics, Inc.***, 299 N.W.2d 414, 419 (Minn. 1980) (stating no reasonable basis to determine damages when plaintiff did not segregate the losses due to the breach from the losses "due to all of the other variable and imponderable factors . . . ."); *see also* ***B & Y***, 279 N.W.2d at 816. Second, Hinz did not introduce his or Kellermann's customer lists, or show which customers Kellermann sold breaching products to that were Hinz's former or prospective customers. Third, the growth rate includes all of Hinz's products. It is not limited to products that competed directly with the breaching Kellermann products. This is relevant because Hinz's products that competed directly with the

breaching products could have sustained the same growth rate over the time period, and thus, Kellermann's breach would not affect Hinz. *See Faust v. Parrott*, 270 N.W.2d 117, 121 (Minn. 1978) (stating on remand that the plaintiff may recover damages only if "the profits they lost are a direct result of defendants' competitive activities"). Fourth, Hinz did not introduce evidence of the market industry or the relative growth rate of the market over the time period. Because this is a relatively new market, it is hard to discern how much of a growth rate is expected. For example, Hinz had a growth rate of 172.2 percent in September 2001 to August 2002. Whether 172.2, 88.2 or 18.8 is typical of the market was uncertain and speculative. *See Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 267 (Minn. 1980) (recognizing "it is more difficult to prove loss of prospective profits to a new business than to an established one").

Based on the evidence, Hinz did not present a reasonable basis for calculating damages. The district court did not err in reversing the damage award. *See Polaris*, 299 N.W.2d at 419.[3]

IV.

Hinz argues the district court erred by excluding from the jury instructions the concept that other proper measures of damages for Kellermann's breach included Kellermann's profits and the royalty rate paid to Hinz.

This court reviews for abuse of discretion the decision to give certain instructions. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 720 (8th Cir. 2008). This court determines "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the

---

[3]Because this court affirms the district court's ruling reversing the damage award, Hinz is not entitled to pre- or post-judgment interest. *See* **Minn. Stat. § 549.09**; **28 U.S.C. § 1961**.

case to the jury." *Id.* "Reversal is only warranted if a party's substantial rights are prejudiced by instructional error." *Id.*

Under Minnesota law, "damages for breach of contract are traditionally measured by the nonbreaching party's loss of expected benefits under the contract." *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 94 (Minn. 1979). *See also B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813, 816 (Minn. 1979); *Faust v. Parrott*, 270 N.W.2d 117, 120 (Minn. 1978). In limited circumstances, the defendant's gain may be useful in determining the plaintiff's loss. *See B & Y*, 279 N.W.2d at 816. In those circumstances, "the plaintiff's profit margin [is] only applied to that portion of the defendant's gross income that derived from the plaintiff's former or prospective customers." *Id.*

As relevant here, the district court instructed the jury on damages stating:

> To be clear: The measure of damages in this case is not the amount of profits that Dr. Kellermann *gained* by breaching the settlement agreement. The measure of damages is the amount of profits that Dr. Hinz *lost* because Dr. Kellermann breached the settlement agreement. . . .

The district court did not err. The applicable law and the evidence in this case demonstrate the proper measure of damages is Hinz's loss profits, not Kellermann's gain. Hinz did not introduce any evidence of the portion of Kellermann's gross income derived from Hinz's former or prospective customers. In fact, he did not introduce a customer list, evidence of which customers bought which product for what purpose, or evidence showing which Kellermann customers were former or prospective customers of Hinz. Therefore, it would have been improper to instruct the jury that the measure of damages is the amount of profits that Kellermann gained. *See B & Y*, 279 N.W.2d at 816.

Moreover, it would also have been improper to instruct the jury that a proper measure of damages is the royalty rate previously paid to Hinz. As Hinz indicates:

"the law, aiming at compensation, . . . considers it fair to hold a defendant for damages which as a reasonable man he ought to have foreseen as likely to follow from a breach." *Franklin Mfg. Co. v. Union Pac. R. Co.*, 248 N.W.2d 324, 325 (Minn. 1976). Because royalty payments were specifically excluded in the settlement agreement (Hinz and Kellermann expressly agreed to terminate the Joint Working Agreement, which required royalty payments to Hinz), it is unfair to instruct that Kellermann, as a reasonable man, ought to have foreseen them as a likely result from the breach.

The instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the damage issue to the jury. The district court did not abuse its discretion.

V.

This court reviews for abuse of discretion the denial of a permanent injunction. *See* ***Kennedy Bldg. Assocs. v. CBS Corp.***, 476 F.3d 530, 533 (8th Cir. 2007). "Because injunctions are intertwined with the remedy under substantive state law, we look to [Minnesota] law on this issue." *See* ***Kelly v. Golden***, 352 F.3d 344, 353 (8th Cir. 2003).

In Minnesota, the "party seeking the injunction must establish that his legal remedy is not adequate, . . . and that the injunction is necessary to prevent great and irreparable injury." ***Cherne Indus., Inc. v. Grounds & Assocs.***, 278 N.W.2d 81, 92 (Minn. 1979) (internal citation omitted). The injury must be of such a nature that money damages alone do not provide adequate relief. ***Morse v. City of Waterville***, 458 N.W.2d 728, 729-30 (Minn. Ct. App. 1990), *rev. denied* (Minn. Sept. 28, 1990). "[T]he burden is on the moving party to establish the material allegations." ***Hideaway, Inc. v. Gambit Invs. Inc.,*** 386 N.W.2d 822, 824 (Minn. Ct. App. 1986).

Denying Hinz's motion for a permanent injunction, the district court stated: "The only injury Hinz has identified in this action is lost profits, which are obviously

compensable with money damages. Hinz has not shown that he has suffered, or will suffer, any other type of injury." Based on the record, this court agrees. Because Hinz fails to show irreparable injury, he is not entitled to a permanent injunction. *See Morse*, 458 N.W.2d at 729 ("The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a[n] . . . injunction."); *Villars v. Provo*, 440 N.W.2d 160, 162-63 (Minn. Ct. App. 1989) (upholding denial of injunctive relief when plaintiff failed to show money damages would be inadequate and identify the harm she would suffer if injunctive relief was denied).

The district court did not abuse its discretion in denying the permanent injunction. *See Kennedy Bldg. Assocs.*, 476 F.3d at 534 ("A district court abuses its discretion when it bases its decision on a legal error or a clearly erroneous finding of fact.").

VI.

This court reviews for abuse of discretion the district court's denial of attorney fees. *See Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 576 (8th Cir. 2007). Under Minnesota law, attorney fees are permitted if authorized by contract or statute. *Int'l Bhd. of Elec. Workers v. City of St. Cloud*, 750 N.W.2d 307, 316 (Minn. Ct. App. 2008).

Here, the settlement agreement authorized them (emphasized added):

> To the extent it becomes necessary for the Defendant [Hinz] . . . to seek Court enforcement of this provision of the Agreement, and the Defendant *prevails*, Plaintiff (including Gottfried Kellerman . . . or any other entity substantially owed or controlled by Plaintiff or Gottfried . . .) agrees to pay all attorneys fees and all costs . . . .

The question is whether Hinz *prevails* under the settlement agreement. *Prevails* is not defined in the agreement. However, under Minnesota law, a breach-of-contract

-11-

claim fails as a matter of law without a showing of damages. ***Evelyn I. Rechtzigel Trust v. Fid. Nat'l Title Ins. Co.***, 748 N.W.2d 312, 321 (Minn. Ct. App. 2008); ***Jensen v. Duluth Area YMCA***, 688 N.W.2d 574, 578-79 (Minn. Ct. App. 2004) ("A breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach. . . . There can be no recovery for damages which are . . . speculative.") (citations omitted). *See also* ***Despatch Oven Co. v. Rauenhorst***, 40 N.W.2d 73, 80 (Minn. 1949) (affirming judgment against party who could demonstrate only nominal damages arising from an alleged breach of contract).

As discussed, Hinz did not provide a reasonable basis for his damages, and thus, his breach-of-contract claim fails as a matter of law. *See* ***Jensen***, 688 N.W.2d at 578-79. Because he did not prevail under Minnesota law, he is not entitled to attorney's fees and costs. The district court did not abuse its discretion.

VII.

The judgment of the district court is affirmed.[4]

_____

_____

[4]Because this court affirms the district court, it need not address Kellermann's cross-appeal.