# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3886

_____

St. Jude Medical S.C., Inc., a Minnesota corporation

*Plaintiff - Appellee*

v.

Biosense Webster, Inc., a California corporation; Johnson & Johnson, a New Jersey corporation; Jose B. de Castro, an individual

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 18, 2015
Filed: April 12, 2016

_____

Before SMITH, BYE, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Biosense Webster, Inc. ("Biosense"), a subsidiary of Johnson & Johnson, recruited and hired Jose B. de Castro while de Castro was working for St. Jude Medical S.C., Inc. ("St. Jude"). St. Jude had signed a three-year employment agreement with de Castro, which would not expire for almost two more years. Soon after de Castro's departure, Sequoia Hospital, a large St. Jude client, took its business

to Biosense. St. Jude sued de Castro and Biosense alleging, among other things, state-law claims of breach of contract and tortious interference. The district court[1] granted summary judgment to St. Jude with respect to de Castro's breach and Biosense's liability for tortious interference. After a jury trial on damages, the district court entered judgments against de Castro and Biosense and awarded damages for the cost of replacing de Castro, lost profits from Sequoia Hospital, and attorney's fees. Biosense and de Castro appeal. We affirm.

## I. *Background*

St. Jude and Biosense are competitive manufacturers of medical equipment. Both companies employ sales representatives assigned to specific geographical areas. In 2009, St. Jude promoted de Castro from field engineer to sales representative for an area including San Francisco and San Jose, California. After two years as a sales representative, in January 2011, St. Jude and de Castro executed a three-year employment agreement. In relevant part, their agreement limited St. Jude's ability to terminate de Castro and prevented de Castro from leaving St. Jude during the term of the agreement.

Later in 2011, after St. Jude and de Castro entered into the agreement, Biosense began courting de Castro as a potential employee. Biosense selected de Castro on the basis of his relationship with Sequoia Hospital, a then-current St. Jude client that Biosense desired to obtain. After multiple meetings, Biosense offered to hire de Castro and promised to defend him from the repercussions of terminating his employment agreement with St. Jude before the term expired. The day after de Castro resigned in February 2012, Biosense filed a declaratory judgment action against St. Jude, asking a federal court in California to declare the employment agreement invalid. St. Jude, a Minnesota-based company, sought application of the Minnesota

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

choice-of-forum provision in the employment agreement, and the California court transferred the case to Minnesota.

The district court in Minnesota granted summary judgment to St. Jude on all issues except damages, which St. Jude tried to a jury and to the court. The jury awarded St. Jude damages from Biosense and de Castro for the cost of replacing de Castro and for lost profits; the court awarded St. Jude attorney's fees. After the trial, the district court denied Biosense's motion for a judgment as a matter of law with respect to damages for lost profits. Biosense and de Castro appeal. We have jurisdiction to review this final judgment of the district court pursuant to 28 U.S.C. § 1291.

## II. *Discussion*

Biosense and de Castro challenge the district court's grant of summary judgment to St. Jude, arguing that (A) Minnesota substantive law does not apply despite the written choice-of-law provision and that (B) de Castro's employment agreement with St. Jude was a restrictive covenant rather than a valid term-of-years employment contract. Biosense further argues that (C) St. Jude cannot recover damages for lost profits on the basis of its tortious-interference claim. Biosense also challenges the district court's denial of its motion for judgment as a matter of law, arguing that (D) the evidence at trial was insufficient to support damages for lost profits. Our review of these matters is de novo. *Pittari v. Am. Eagle Airlines, Inc.*, 468 F.3d 1056, 1061 (8th Cir. 2006); *St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878, 880 (8th Cir. 1998).

### A. *The Minnesota Choice-of-Law Provision is Valid*

The parties agree that the district court is bound to follow Minnesota's choice-of-law rules. Applying these rules, the district court concluded that the Minnesota choice-of-law provision in St. Jude's agreement with de Castro was binding because it was entered into in good faith and without an intent to evade the law. In appealing

that ruling, Biosense and de Castro argue that the choice-of-law provision is invalid because it was not negotiated and because it avoids the application of California law. We disagree.

The Minnesota Supreme Court "is committed to the rule that parties may agree that the law of another state shall govern their agreement and will interpret and apply the law of another state where such an agreement is made." *Milliken & Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 n.1 (Minn. 1980) (quotation and citation omitted). And we have recognized that under Minnesota law a contractual choice-of-law provision will govern so long as the parties "'act[ed] in good faith and without an intent to evade the law.'" *Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 568 (8th Cir. 1982) (quoting *Combined Ins. Co. of Am. v. Bode*, 77 N.W.2d 533, 536 (Minn. 1956)).

Biosense and de Castro argue that the choice-of-law provision is invalid because it was not negotiated. But they cite no authority to support the proposition that good faith requires an actual negotiation. Indeed, the word *negotiate* appears nowhere in either of the cases that Biosense cites on the matter. *See Combined Ins. Co. of Am.*, 77 N.W.2d at 533; *Nesladek v. Ford Motor Co.*, 46 F.3d 734 (8th Cir. 1995). Minnesota law only requires that the parties "act[] in good faith." *Combined Ins. Co. of Am.*, 77 N.W.2d at 536. And Biosense and de Castro have not shown that either St. Jude or de Castro failed to act in good faith when executing the employment agreement.

Biosense and de Castro also argue that the choice-of-law provision is invalid because it attempts to evade the law of California, where de Castro worked. Agreeing to be bound by the law of the state where an employer is based, as opposed to the law of the state where an employee works, does not reveal "an intent to evade the law." *See id.* at 536. The very purpose of a choice-of-law provision is to select one body of governing law even though more than one could apply. It is unsurprising that the

-4-

selected body of law will often favor one party over the other; that preference is simply part of the exchange of rights and obligations under the agreement.

In sum, the district court correctly concluded that the Minnesota choice-of-law provision in St. Jude's employment agreement with de Castro is valid because the parties acted in good faith and without the intent to evade the law.

B. *St. Jude's Agreement with de Castro Is Not a Restrictive Covenant*

The district court concluded that, under Minnesota law, de Castro's employment agreement with St. Jude was a valid term-of-years employment contract, not a restrictive covenant, because it is enforceable by damages only. Biosense and de Castro argue that the damages at issue have the same effect as a restrictive covenant. We disagree.

In *St. Jude Medical S.C., Inc. v. Biosense Webster, Inc.*, No. A13-0414, 2013 WL 5508389 (Minn. Ct. App. Oct. 7, 2013), the Minnesota Court of Appeals addressed a similar dispute. In fact, de Castro is the only party in the case at hand that was not also a party in the prior case. *Id.* at *1. And the employment contract, the facts, and the legal questions in the prior case bear remarkable resemblance to those at issue here. *Id.* In that case, the court upheld St. Jude's term-of-years employment agreement, noting that it was enforceable only by damages, not an injunction, and was limited to a fixed term. *Id.* at *1–2. The same is true in this case.

Biosense and de Castro argue that the prior case, as an opinion of the Minnesota Court of Appeals, is not binding. Instead, they argue that we should look to the Minnesota Supreme Court's opinion in *Harris v. Bolin*, 247 N.W.2d 600 (Minn. 1976). In that case, the court considered a provision whereby an employee would forfeit vested contributions that he had received through the employer's profit-sharing plan if he violated a noncompete clause. *Id.* at 601–02. The court held that the clause was an invalid restrictive covenant "because it [was] not limited as to time, harm to

the employer, or geographical area." *Id.* at 603. While *Harris* may stand for the proposition that monetary forfeiture may operate as a restrictive covenant, it is readily distinguishable. The provision at issue in *Harris* was a perpetual prohibition of competition, not a term-of-years agreement as in this case. *Id.* Also unlike this case, the amount of the forfeiture in *Harris* was unrelated to the damages the breach actually caused. *Id.* Accordingly, *Harris* is inapplicable here.

Biosense and de Castro also argue that new evidence of St. Jude's intent to lock up employees renders this case distinguishable from the prior case. But even under *Harris*, St. Jude's intent is immaterial. *See id.* at 602–03. St. Jude intended to lock up employees using the fixed-term employment contract. But in doing so, St. Jude bargained for the lock-up period by providing its employees with valuable compensation and protection from termination. And it limited the lock-up period and penalty to the term of the agreement and the damages actually incurred.

Finally, Biosense argues that the district court erred in granting partial summary judgment with respect to St. Jude's tortious-interference claim. Biosense's challenge on this issue, however, relies on establishing the invalidity of the underlying employment contract. Because we conclude that the district court correctly upheld the employment contract, Biosense's challenge to the tortious-interference claim also fails.

In sum, the district court correctly concluded that St. Jude's term-of-years employment agreement with de Castro is valid and enforceable under Minnesota law and that Biosense was liable for tortuously interfering with that agreement.

## C. *St. Jude Can Recover Lost-Profit Damages*

The district court concluded that, under Minnesota law, St. Jude could seek damages for lost profits on the basis of Biosense's tortious interference with St. Jude's

employment agreement with de Castro. Biosense argues that only contract damages are available for tortious interference. We disagree.

Biosense cites our opinion in *Storage Technology Corp. v. Cisco Systems, Inc.*, 395 F.3d 921 (8th Cir. 2005), arguing that it supersedes our holding in *H.J., Inc. v. International Telephone & Telegraph Corp.*, 867 F.2d 1531 (8th Cir. 1989). In *H.J.*, we held that if "liability is based upon . . . tortious interference, the proper measure of damages is the present value of profits lost as a result of [the] improper actions." 867 F.2d at 1549 (citation omitted). In *Storage Technology*, we noted that "[t]he usual remedy provided by Minnesota law for interference with contract is to compensate the victim for the damages that resulted from the loss of the contract." 395 F.3d at 925. On the basis of this language from *Storage Technology*, Biosense argues that lost-profit damages are not available for a tortious-interference claim because they are not contract damages. But in *Storage Technology* we recognized that Minnesota law allows "damages [that] would not be available in a suit on the contract itself." *Id.* (citation omitted). We held that "Minnesota courts would allow a restitutionary remedy in a case in which the interference alleged was inducing an employee's breach of noncompetition and nondisclosure covenants and fiduciary duties." *Id.* at 926. In short, *Storage Technology* does not stand for the proposition for which Biosense cites it. The district court correctly concluded that St. Jude could recover damages for lost profits based on Biosense's tortious interference.

D. *The Evidence Was Sufficient to Support Lost-Profit Damages*

The district court denied Biosense's motion for judgment as a matter of law with respect to lost-profit damages. The court determined that St. Jude had provided evidence from which a reasonable jury could conclude that Biosense's tortious interference caused St. Jude's lost profits. Biosense points to the conflicting testimony of a key witness from Sequoia Hospital and the evidence indicating a corresponding shift in profits from St. Jude to Biosense, arguing that this conflict renders the evidence insufficient to support causation. We disagree.

In reviewing the denial of a motion for a judgment as a matter of law, we must "view[] the evidence most favorably to the nonmoving party and draw[] all reasonable inferences in its favor." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 984 (8th Cir. 2008) (citation omitted). "If the evidence . . . would permit reasonable jurors to differ in the conclusions they draw, judgment as a matter of law cannot be granted." *Id.* (quotation and citation omitted).

In this case, the district court concluded that the following evidence supported causation: St. Jude's decline in profits corresponded with Biosense's increase in profits after de Castro changed employers. Internal Biosense documents indicated that hiring de Castro was part of a strategy to win over Sequoia Hospital—one of de Castro's clients on behalf of St. Jude. After de Castro joined Biosense, he offered Biosense's competitive equipment free of charge to Sequoia Hospital on a trial basis. A key physician witness from Sequoia Hospital testified that neither St. Jude's nor Biosense's product was superior to the other. And the founding physician at Sequoia Hospital's cardiology group continued to use St. Jude's system exclusively, even after Biosense's system was available.

Biosense challenges the evidence supporting loss causation on two bases. First, Biosense argues that St. Jude has failed to establish loss causation because the key physician witness from Sequoia Hospital testified that a corporate representative such as de Castro "has no role whatsoever in the decision as to which technology" the hospital uses. That physician also testified that Sequoia Hospital was already looking at the Biosense product before de Castro switched. We have held that a jury is free to believe all, some, or none of a witness's testimony. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004). Accordingly, the jury was free to believe that de Castro's move to Biosense initiated and played a role in Sequoia Hospital's decision to use Biosense's product, thereby ignoring the part of the physician witness's testimony regarding de Castro's role, while believing the other part of his testimony that neither product was superior.

Second, Biosense argues that the evidence of a corresponding shift in profits from St. Jude to Biosense is weak because it fails to account for other market variables like product quality and customer purchasing decisions. For support, it points to our opinion in *Hinz*, where we held that a drop in sales for a company corresponding with an increase in sales for its competitor is insufficient alone to establish loss causation. 538 F.3d at 985. Unlike in *Hinz*, the profit data in this case were accompanied by specific information about the purchasing decision of the client accounting for the shift of profits. The evidence here also suggested that the products were comparable. *Hinz*'s disapproval of bald evidence of a profit shift is thus inapplicable.

In sum, the district court correctly determined that there was sufficient evidence from which a reasonable jury could conclude that Biosense caused St. Jude to lose profits.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____