# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2371

_____

Kennedy Building Associates,     \*
     \*
     Plaintiff - Appellee,     \*
     \*   Appeal from the United States
     v.     \*   District Court for the
     \*   District of Minnesota.
CBS Corporation,     \*
     \*
     Defendant - Appellant.     \*

_____

Submitted: December 14, 2006
Filed: February 2, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and RILEY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

In <u>Kennedy Building Associates v. Viacom, Inc.</u>, 375 F.3d 731 (8th Cir. 2004) (<u>Kennedy I</u>), we remanded in part for modification of the injunction enforcing the Minnesota Environmental Rights Act (MERA). CBS Corporation, the most recent incarnation of the entity responsible for contaminating the Kennedy Building property in Minneapolis, appeals from the injunction as modified on remand. The modified injunction required CBS to perform those duties prescribed in the Minnesota Decision Document, issued by the Minnesota Pollution Control Agency, which were necessary to prevent the release of further contaminants into soil and groundwater; to test as required by the Decision Document, and to remedy migration revealed by those tests, if any; to remedy any remaining contamination exposed during future excavation on

the property; and to post a performance bond to secure performance of these obligations. Kennedy Bldg. Assocs. v. Viacom, Inc., No. 99-CV-1833 JMR/FLN, 2006 WL 305279, at *3-4 (D. Minn. Feb. 8, 2006). CBS contends that the injunction did not sufficiently specify which acts were required of it, that the evidence showed there was no need for MERA relief, and that the district court had no power to require CBS to post a performance bond. We reject the latter two arguments, but remand for modification making the injunction's commands more specific.

Westinghouse, the corporate predecessor of CBS's corporate predecessor, operated an electrical transformer repair facility on the Kennedy Building property, which resulted in contamination of the property with polychlorinated biphenyls (PCBs) and chlorobenzenes. Westinghouse sold the property in 1980, and a partner in Kennedy Building Associates bought the property and transferred it to Kennedy in 1982. Kennedy I, 375 F.3d at 736-37. Kennedy discovered the contamination in 1997. Kennedy sued Viacom and recovered a jury verdict for state law strict liability; a judgment for response costs under the federal Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) and the Minnesota Environmental Response and Liability Act (MERLA); and an injunction under MERA to remediate the property so that the deed restriction required by state law for contaminated property could be removed. Id. at 737. On appeal, we reversed the jury verdict and ordered the injunction to be modified so that it ordered only the relief authorized by MERA, that is, "the prevention of ongoing releases of PCBs and chlorobenzenes into soil and groundwater." Id. at 748; see id. at 750. Just before the trial, Viacom had entered into a consent order with the Minnesota Pollution Control Agency agreeing to develop and implement a remediation plan for the property; Viacom argued that this consent order rendered the injunction moot and that the consent order preempted relief under MERA; we rejected both arguments and held that because the injunction did not conflict with an order of the Minnesota Pollution Control Agency, it was not preempted by MERA. 375 F.3d at 742-46.

On remand, the district court held the matter in abeyance for a year and a half until Viacom and the Minnesota Pollution Control Agency could arrive at a substantive plan for remediation. See 2006 WL 305279, at *1. The Minnesota Decision Document of April 20, 2005, required removal of contaminated soil down to twelve feet below the surface of the property, except for the soil under the building. The rationale for these specifications was that soil deeper than twelve feet and soil under the building was not immediately accessible to human or ecological "receptors" and therefore did not pose a current threat to public health. However, the remediation plan was subject to two caveats. First, long-term monitoring was required "to ascertain plume stability and provide data to show that contamination in ground water is not continuing to migrate." Second, although the Decision Document did not impose substantive requirements, it acknowledged that if the building on the property were demolished or the floor had to be removed, then the contaminants under the building would become exposed, and Viacom would be required to come up with a response plan, which would then start the whole process of administrative remediation all over again. The Decision Document did not address indoor contamination at the building because "indoor contamination currently falls outside the purview of the [Minnesota Pollution Control Agency]."

Kennedy was not satisfied with the remediation plan because it would leave contamination in place underground and inside the building. Once the Minnesota Pollution Control Agency had issued the Decision Document, Kennedy sought a contested-case hearing in the agency. When that was denied, Kennedy sought review by writ of certiorari of the agency's remedy selection. The Minnesota Court of Appeals dismissed the writ on the grounds that the agency's decision was not final and that "the [agency] order does not preclude [Kennedy] from litigating appropriate remediation in [its] pending federal district court action." In the Matter of the Kennedy Building Superfund Site Petition for Contested Case Hearing, No. A05-994 (Minn. Ct. App. Aug. 2, 2005).

Back in the district court, Kennedy moved to modify the original injunction to incorporate the requirements of the Decision Document, to order Viacom to remediate the interior of the building, and to require Viacom to post a bond to assure performance of the remedial work that was left contingent in the Decision Document on future demolition or disturbance of the building or its floor. Counsel for Viacom explained at the hearing that Viacom had undergone a corporate reorganization, with the result that the entity called "Viacom" would no longer be responsible for the Kennedy site and that the entity with such responsibility would now be known as "CBS Corporation." The district court noted that the Decision Document gave Kennedy no right to enforce the remediation plan, that no remediation had taken place so far, and that if Kennedy were to decide to redevelop the property in a way that required excavating deeper than twelve feet, there was no way to assure that remediation would happen promptly enough to make such development commercially feasible.

In light of the evidence adduced at the hearing, the district court issued an injunction including the following requirements:

> (1) Viacom was ordered to "perform those actions prescribed in the [Decision Document] which will prevent the release of PCBs and chlorobenzenes into uncontaminated soil and groundwater consistent with the purposes of MERA." 2006 WL 305279, at *3.
> (2) Viacom was ordered to provide to the court and to Kennedy copies of the results of tests required by the Decision Document. In the event a test should show migration of the contaminants, Viacom was obliged to submit a remediation plan within 30 days of receiving the test result. Id.
> (3) In the event the future development of the parcel should result in excavation of soils left in place under the Decision Document's remediation plan (i.e., soil deeper than twelve feet or underneath the

-4-

building), Kennedy was obliged to notify Viacom, whereupon Viacom was required to submit to the court a remediation plan within 30 days of receiving the notification. Id.

(4) To ensure that the relief in paragraph 3 above would be timely provided and adequately funded, the court required Viacom and its corporate successors to post a bond or irrevocable letter of credit. Id. In a subsequent order, the court set the amount of the bond at $1,311,000 and required that it be maintained for five years. Kennedy Building Associates v. CBS Corp., No. 99-CV-1833 (April 21, 2006).

CBS appeals the injunction making a large number of arguments that can be categorized into three types of objection: the injunction is not sufficiently specific, it is not supported by the evidence before the court, and the court had no power to require CBS to post a performance bond.

We review for abuse of discretion a district court's issuance of a permanent injunction. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 967 (8th Cir. 2005). A district court abuses its discretion when it bases its decision on a legal error or a clearly erroneous finding of fact. Id.

CBS attacks the first item of the injunction, requiring it to perform those requirements of the Decision Document that will prevent the release of PCBs and chlorobenzenes into uncontaminated soil and groundwater "consistent with the purposes of MERA." See 2006 WL 305279, at *3. CBS contends that since the Decision Document was designed to comply with MERLA, not MERA, it is not clear which of the provisions of the Decision Document the district court considered necessary to accomplish the goals of MERA--preventing the release of PCBs and chlorobenzenes into uncontaminated soil and groundwater. We need not wrestle with this argument, for Kennedy conceded at oral argument before us that the injunction was inadequately specific in this regard and agreed that the injunction should be

remanded for clarification of this point. Accordingly, we remand for the district court to specify in accord with Federal Rule of Civil Procedure 65(d) which of the requirements of the Decision Document are required under the MERA injunction in this case. On remand, the district court should expressly list those actions required by the injunction.

CBS further contends that the record does not support the issuance of any MERA injunction because there is no record evidence of continuing releases of PCBs or chlorobenzenes. In Kennedy I, we concluded that there were continuing releases within the meaning of MERA. We relied on the district court's finding of fact after trial that PCBs were continuing to migrate in the soil and groundwater because of the presence of mineral oil in the soil. 375 F.3d at 747. The finding was supported by expert testimony at trial, as well as Viacom's stipulation in the administrative consent order. Id. It is not clear whether CBS is contending that something changed after trial or that the findings on which we based our first holding were erroneous. Viacom did nothing to clean up the site between the time of trial and the January 3, 2006, hearing on the modification. Nevertheless, CBS points to statements from its expert saying that groundwater testing in February and August 2005 showed that the groundwater plume is stable. In contrast, Kennedy points to statements by its expert witness that the August 2005 data show increases in several contaminants in several wells and that CBS's expert's opinion is not justified by the data. Thus, the record shows merely a conflict of expert opinion, rather than a lack of evidence of continuing migration. Moreover, this conflict is peripheral to the actual injunction issued, since even CBS's expert conceded that continuing testing is necessary to ascertain whether the plume is stable.

CBS also contends that the district court found the plume had stabilized, based on the following statement by the court at the modification hearing: "Now, the MPCA seems to think that that's all [remediation to twelve feet] that's needed at this time. It says that the plume has not moved, and right now the condition of the situation is as

it is." The district court made this statement in denying Kennedy's request for an immediate order to clean up the soil more than twelve feet below the surface. The statement cannot be characterized as a definite finding that the plume has stabilized, any more than the Decision Document can be so characterized; both the Decision Document and the injunction are provisional. Both are premised on the presumption that we cannot be sure what the plume is doing without continuing testing; contaminants may well migrate, and if so, further remediation will be required. The Decision Document requires monitoring "for a minimum of five years and, if the monitoring indicates that the contamination plume is expanding or migrating, the MPCA will require ground water remedial action." The injunction, of course, requires the same. CBS has by no means shown that the injunction is based on a clearly erroneous finding of fact.

CBS next contends that the district court lacked power to require it to post a performance bond. We begin by examining the language of MERA. Minn. Stat. Ann. § 116B.07 provides:

> The court may grant declaratory relief, temporary and permanent equitable relief, <u>or may impose such conditions upon a party as are necessary or appropriate to protect the air, water, land or other natural resources located within the state from pollution, impairment, or destruction.</u>

(Emphasis added.) The statute certainly appears to be broad enough to allow the court to require a bond to be posted for five years to assure that foreseeable events of excavation or groundwater migration will not result in pollution to the soil and water of Minnesota.

CBS relies on <u>Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.</u>, 527 U.S. 308, 332 (1999), which is instructive, although not in the way CBS suggests. In <u>Grupo Mexicano</u>, creditors of an insolvent Mexican company obtained a preliminary

injunction ordering the company not to distribute or transfer its assets while the creditors pursued their damages claim against the company. The Supreme Court reversed, holding that traditional equitable remedies did not include a freeze order to preserve assets in aid of a legal claim which was not yet reduced to judgment. Justice Scalia distinguished two kinds of cases, both of which would include the case at bar. First, he distinguished cases in which the underlying suit was for equitable relief, rather than damages. Id. at 324-25 (discussing Deckert v. Independence Shares Corp., 311 U.S. 282 (1940)). Here, the underlying relief sought is equitable, rather than legal, so our case involves the use of equity in support of equity, rather than equity in support of a legal remedy. Next, Justice Scalia distinguished cases in which a statute authorized injunctions "necessary or appropriate for the enforcement" of the statute. Id. at 325-26 (discussing United States v. First Nat'l City Bank, 379 U.S. 378 (1965)). In this case, MERA has authorized the court to impose such conditions as are "necessary or appropriate" to accomplish the goals of MERA, so our case is distinguishable from Grupo Mexicano on that ground. CBS has not come forward with any authority casting doubt on the district court's power to require a bond as part of an effective MERA remedy.

Finally, CBS contends that the district court should have abstained from exercising jurisdiction on the grounds of comity and federalism. This argument is substantially redundant of Viacom's argument on the first appeal that the administrative consent order was entitled to preemptive effect barring MERA relief. We rejected that argument in Kennedy I and remanded for refinement of the MERA injunction. 375 F.3d at 743-48. The district court took us at our word, as it was required to do, and carefully avoided modifying the injunction in any way that could impinge on the state administrative remedy. We will not, at this stage in the litigation, reverse on the strength of an old argument dressed up as a new one.

We remand for the district court to specify which requirements of the Decision Document are included as items of the MERA injunction; in all other respects, the order of the district court is affirmed.

_____