The SOUTHERN NEW ENGLAND TELEPHONE COMPANY, Plaintiff,

v.

GLOBAL NAPS, INC., Global Naps New Hampshire, Inc., Global Naps Networks, Inc., Global Naps Realty, Inc. and Ferrous Miner Holdings, Ltd., Defendants.

Convergent Networks, Inc. and Frank T. Gangi, Reach and Apply, Defendants.

Civil Action No. 08–12052–NMG.

United States District Court, D. Massachusetts.

Jan. 7, 2009.

Asha A. Awad, Timothy P. Jensen, Kelley A. Jordan–Price, Christina L. Lewis, Hinckley, Allen and Snyder, LLP, Boston, MA, Hans J. Germann, Mayer Brown LLP, Chicago, IL, for Plaintiff.

Eric C. Osterberg, Dreier LLP, Stamford, CT, William J. Rooney, Jr., Norwood, MA, for Defendants.

## Memorandum and Order

GORTON, District Judge.

The plaintiff, a judgment creditor of the defendants, seeks a preliminary injunction to prevent the further transfer of assets allegedly conveyed to the reach and apply defendants fraudulently.

## I. *Factual Background and Procedural History*

Plaintiff, Southern New England Telephone Company ("SNET"), brought suit in the United States District Court for the District of Connecticut to recover money owed by defendants Global NAPs, Inc., Global NAPs New Hampshire, Inc., Global NAPs Networks, Inc., Global NAPs Realty, Inc. and Ferrous Miner Holdings, Ltd. (collectively "the judgment debtors") which are all companies wholly owned, directly or indirectly, by the reach and apply defendant Frank Gangi ("Gangi"). SNET was awarded a default judgment of over five million dollars in that suit on July 9, 2008.

Because the judgment debtors did not own enough property in Connecticut to satisfy that judgment, SNET registered the judgment in this District on October 28, 2008. Upon attempting to satisfy the judgment in Massachusetts, however, SNET learned that virtually all of the property of the judgment debtors had been transferred to another entity.

Bank records obtained in the course of the Connecticut litigation indicate that in 2004 and 2006 the judgment debtors transferred millions of dollars to the reach and apply defendant Convergent Networks, Inc. ("Convergent"), another company wholly owned by Gangi. SNET alleges that there were more than 25 transfers of "substantial sums" as well as notes payable (from Convergent to some of the judgment debtors) and loans (from some of the judgment debtors to Convergent). The transferred money was allegedly used, at lease in part, to pay Gangi a substantial salary and to cover the expenses charged to his personal credit card.

SNET alleges that the transfers to Convergent were fraudulent and seeks an injunction to prevent Convergent and Gangi from further transferring assets. SNET filed suit in this Court on December 10, 2008, and contemporaneously filed an *ex parte* motion for a temporary restraining order ("TRO"). This Court granted the TRO on the following day to enjoin Convergent and Gangi from transferring any of their real or personal property except for what is reasonable and necessary for the ongoing operation of Convergent's business and for Gangi's personal and living expenses up to $10,000 per month. On December 31, 2008, this Court heard oral argument on whether to convert the TRO into a preliminary injunction.

## II. *Legal Analysis*

### A. Standard of Review

To obtain preliminary injunctive relief under Fed.R.Civ.P. 65, a movant must demonstrate

(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships and (4) a fit (or lack of friction) between the injunction and the public interest.

*Nieves–Márquez v. Puerto Rico,* 353 F.3d 108, 120 (1st Cir.2003) (citation omitted). Likelihood of success on the merits is the critical factor in the analysis. *Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993) (citations omitted).

### B. Application

#### 1. Likelihood of Success on the Merits

This Court concludes that there is a substantial likelihood that SNET will succeed on the merits of its fraudulent transfer claim. Specific evidence proffered by SNET indicates that at least some of the transfers from the judgment debtors to Convergent will likely be found fraudulent, and that Gangi is a beneficiary of those transfers.

#### a. Against Convergent

SNET alleges that the judgment debtors made fraudulent transfers to Convergent in violation of M.G.L. c. 109A, § 5(a). That statute states, in relevant part,

A transfer made ... by a debtor is fraudulent as to a creditor ... if the debtor made the transfer ...:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably

small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Actual intent under § 5(a)(1) may be proven "circumstantially and inferentially." *See Palmer v. Murphy,* 42 Mass.App.Ct. 334, 677 N.E.2d 247, 255 (1997). In determining whether a debtor has the requisite intent, the Court may consider whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

M.G.L. c. 109A, § 5(b). One of these factors may "spur mere suspicion, [but] the

confluence of several can constitute conclusive evidence of an actual intent to defraud." *Hasbro, Inc. v. Serafino,* 37 F.Supp.2d 94, 98 (D.Mass.1999) (citation and internal quotation marks omitted).

Here a confluence of several factors supports a finding that SNET has shown a substantial likelihood of success on the merits. First, the transfers at issue were to an "insider" because the judgment debtors and Convergent are all owned and controlled by the same person (Gangi). *See* M.G.L. c. 109A, § 5(b)(1). Second, the judgment debtors appear to have made attempts to conceal the transfers. *See* § 5(b)(3). Such efforts include resisting court-issued disclosure and discovery orders, making false representations in the financial documents that were submitted to the courts and hiding and destroying financial records. Third, the judgment debtors were sued in Connecticut before the allegedly fraudulent transfers took place. *See* § 5(b)(4). Together these factors suggest that SNET would be able to prove that transfers to Convergent were made with an intent to defraud creditors.

Moreover, there is credible evidence of a fraudulent transfer pursuant to M.G.L. c. 109A § 5(a)(2). SNET alleges that the judgment debtors received neither adequate consideration nor repayment in return for the transfer of millions of dollars to Convergent. Although Gangi responds in his declaration that the payments were for services rendered, the absence of *any* documentation (in the form of service agreements or invoices) to corroborate that claim is suspect. Moreover, the limited documentary evidence before this Court (in the form of "Trial Balance Reports") indicates that payments from the judgment debtors to Convergent were loans. This Court is underwhelmed by Gangi's assertion that accountants merely used the term "loan" as a placeholder for balance sheet entries that were later corrected, particularly in light of the absence of any evidence that the entries were subsequently corrected.

#### b. Against Gangi

This Court is also persuaded that SNET will likely succeed on its claim of fraudulent transfers against Gangi. Pursuant to M.G.L. c. 109A, § 9(b)(1), in an action for fraudulent transfer a creditor may recover judgment from "the first transferee of the asset or the person for whose benefit the transfer was made." Here, Convergent was the first transferee but Gangi, as Convergent's sole owner and highly-compensated employee, was the person for whose benefit the transfers were made.

### 2. Risk of Irreparable Harm

SNET argues that it will suffer irreparable harm if a preliminary injunction does not enter because Gangi will remain free to transfer assets between his numerous companies to prevent SNET from satisfying its judgment. It suggests that Gangi is highly likely to engage in such transfers because he has exhibited a history of such behavior in the past.

This Court is persuaded that, absent an injunction, there is a substantial risk that Convergent or Gangi will dissipate, conceal or otherwise secrete assets thus causing irreparable harm to SNET. Although there is insufficient proof that Convergent has carried on an illegitimate business practice, there is a plethora of circumstantial evidence that Gangi, as the person who owns and controls Convergent as well as all of the judgment debtors, has been implicated in suspicious business activity.

### 3. Balance of the Hardships

SNET currently suffers a continuing injury in not being able to recoup the debt owed to it. Convergent and Gangi, on the other hand, would suffer no unreasonable hardship as a result of an injunction that

limits them to reasonable and necessary expenditures. Consequently, the balance of hardships favors entry of an injunction here.

#### 4. Public Interest

SNET asserts that the public interest would not be harmed, and if anything, would benefit from the expedient enforcement of judgments. Convergent and Gangi make no claim to the contrary. Indeed, the public interest is not greatly implicated in this case but, to the extent that it is, it favors entry of an injunction.

#### C. Other Arguments Against the Issuance of a Preliminary Injunction

In addition to arguing that the requirements for issuing a preliminary injunction have not been met, Convergent and Gangi also contend that this Court does not have the power to issue a preliminary injunction in this case. In support of that contention they cite to M.G.L. c. 223, § 71 and *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999).

■ Chapter 223, § 71 states that: "Shares of stock shall not be attached in a civil action in which *only* money damages are sought." M.G.L. c. 223, § 71 (emphasis added). That statute is inapposite here because SNET is seeking injunctive relief (i.e., to set aside the fraudulent conveyance) and not merely money damages.

In *Grupo,* the Supreme Court held that a preliminary injunction freezing assets was inappropriate in an action for money damages where the plaintiff claimed no lien or equitable interest in the property in question. 527 U.S. at 333, 119 S.Ct. 1961. That case has been consistently interpreted by lower courts to preclude injunctions only in cases where strictly monetary relief is sought. *See, e.g., Animale Group*

*Inc. v. Sunny's Perfume Inc.,* 256 Fed. Appx. 707, 708 (5th Cir.2007); *Kennedy Bldg. Assocs. v. CBS Corp.,* 476 F.3d 530, 535 (8th Cir.2007); In re *Focus Media Inc.,* 387 F.3d 1077, 1085 (9th Cir.2004); *United States ex rel. Rahman v. Oncology Assocs. P.C.,* 198 F.3d 489, 492 (4th Cir. 1999); *see also Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.,* 77 F.Supp.2d 199, 203 (D.Mass.1999). Again, because SNET seeks injunctive relief, *Grupo* does not preclude this Court from entering a preliminary injunction. *See Kennedy Bldg. Assocs.,* 476 F.3d at 535 ("[O]ur case involves the use of equity in support of equity, rather than equity in support of a legal remedy.").

Convergent and Gangi also devote a considerable portion of their opposition and the entirety of a supplemental memorandum to arguing that orders of the Connecticut District Court were flawed. Those arguments, although perhaps relevant to the judgment debtors' appeal to the Second Circuit, are not properly before this Court nor are they relevant to the issuance of a preliminary injunction in this case.

#### ORDER

In accordance with the foregoing, SNET's motion for a preliminary injunction (Docket No. 4) is **ALLOWED.** The injunction itself is set forth separately.

**So ordered.**