# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3622

_____

Kennedy Building Associates,

   Plaintiff - Appellant,

  v.

CBS Corporation,

   Defendant - Appellee.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of Minnesota.
\*
\*
\*

_____

Submitted: October 15, 2008
Filed: August 18, 2009

_____

Before BYE, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

In Kennedy Building Associates v. CBS Corporation (Kennedy II), 476 F.3d 530 (8th Cir. 2007), we remanded in part for modification of the district court's injunction, asking the district court to determine which requirements of the Minnesota Decision Document were necessary to accomplish the goals of the Minnesota Environmental Rights Act (MERA). Minn. Stat. § 116B.01 et seq. The district court's modified injunction states that CBS has "substantially complied" with the Minnesota Decision Document and imposes no additional requirements. Kennedy appeals. Kennedy also argues that the district court's order denying its requests to increase the amount of the performance bond posted by CBS and for post-judgment response costs was in error. We affirm in part and vacate and remand in part.

I.

In our previous decisions, <u>Kennedy Building Associates v. Viacom, Inc.</u> (<u>Kennedy I</u>), 375 F.3d 731 (8th Cir. 2004) and <u>Kennedy II</u>, 476 F.3d 530 (8th Cir. 2007), we have detailed the history of the Kennedy Building site. The property was previously owned by Westinghouse, which operated an electrical transformer repair facility there. These operations led to significant contamination of the building, surrounding soil, and groundwater with polychlorinated byphenyls (PCBs) and chlorobenzenes, which are hazardous substances. Westinghouse was "virtually certain" that there was PCB contamination on the property. Despite this knowledge, Westinghouse sold the site to Hillcrest Development Company in 1980 without disclosing the probable contamination. In 1982, Gerald Trooien, a partner in Kennedy Building Associates, bought the property and transferred it to Kennedy.

In 1997, Kennedy discovered the contamination. Kennedy reported the contamination to the Minnesota Pollution Control Agency (the Agency) and began further investigations and clean-up of the site. Kennedy then brought suit against CBS, the successor in interest to Westinghouse.[1] The district court found CBS liable under the federal Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) and the Minnesota Environmental Response and Liability Act (MERLA). The court awarded Kennedy $106,393.23 in statutory response costs and issued a declaratory judgment of liability for future response costs, which CBS did not appeal.[2] <u>See</u> <u>Kennedy I</u>, 375 F.3d at 735. The court also issued an injunction under MERA, requiring CBS to clean up the contamination at the site. CBS appealed the injunction, and we reversed and remanded "for more precise definition of the

_____

[1] Liability for the site is now placed with CBS Corporation (CBS). CBS was preceded by Viacom, which was the party of record in <u>Kennedy I</u>. For simplicity, we will consistently refer to CBS, substituting it for Viacom where applicable.

[2] The district court also awarded Kennedy statutory attorney's fees, witness fees, costs, and prejudgment interest.

specific acts required of [CBS]" and to limit its scope to only that relief authorized by MERA.[3] Id. at 748.

Before the Kennedy I proceedings, CBS entered into a consent order with the Agency that would lead to the development and implementation of a Response Action Plan (Plan) to clean up pollution at the Kennedy Building site. On remand from Kennedy I, the district court held the case in abeyance for the development of the Plan. Kennedy participated in the comment process. Relevant to this appeal, Kennedy commented that absent the removal of all contaminated soils from the site, "the asphalt cap will have to be maintained indefinitely to prevent water infiltration." Kennedy specifically objected to the inclusion of permeable, unpaved islands in the parking lot plans submitted by CBS. The Agency considered this comment and responded that any concern regarding residual contamination would be addressed by monitoring. Futher, it explained that "replacement of the asphalt surface is not an integral part of the remedial action; it is solely for the purpose of Site restoration." At the end of the administrative process, the requirements of the Plan were laid out in the Minnesota Decision Document (Decision Document) issued by the Agency. The Plan required CBS to perform site preparation and asphalt removal; soil excavation and confirmation sampling; off-site disposal, backfilling of excavated areas, site restoration, and resurfacing of excavated areas; and long term monitoring. The Decision Document also noted that CBS is obligated to perform future additional remedial action upon redevelopment or exposure of "remotely accessible" soils.

On February 8, 2006, the district court issued an order modifying the injunction to 1) incorporate the Plan requirements from the Decision Document, 2) order CBS

---

[3] Additionally, we reversed a jury verdict in favor of Kennedy on common law strict liability claims that had awarded it $225,000 in compensatory damages and $5,000,000 in punitive damages. We reversed and remanded the entry of prejudgment interest and award of attorneys' fees insofar as they were awarded for the strict liability claim. Kennedy I, 375 F.3d at 735.

to provide the court with the results of periodic testing, and 3) order further remedial action contingent on tests showing the spread of contamination or redevelopment that would expose unremediated soils. The court also required CBS to post a bond to cover costs of future relief, which was later set at $1,311,000. CBS appealed, arguing that the injunction was not sufficiently specific, that the evidence showed there was no need for injunctive relief under MERA, and that the district court did not have the power to require CBS to post a bond. In Kennedy II, we affirmed as to the latter two arguments, but found the injunction to lack the required specificity and remanded with instructions that the district court "expressly list those actions required by the injunction." 476 F.3d at 534, 536.

CBS implemented the Plan, beginning work in July 2006. The Plan required CBS to excavate all contaminated soil up to twelve feet below the surface and backfill with clean fill. This excavation covered most of the lot and was particularly extensive on the east and north sides of the Building. In order to complete the required excavation without risk of severe structural damage, CBS determined that it was necessary to install a system of three-foot-wide concrete buttresses on the east and north sides of the Building. Rather than removing the buttresses after excavation and backfill, CBS determined that it was preferable to leave them in place. They were covered with backfill and paved over when the parking lot was restored. Restoration of the site, including permanent paving of the parking lot, was completed in May 2007. Throughout the implementation of the Plan, KBA alleges that it incurred expenses due to testing soil, holding meetings, having building personnel provide access to various parts of the Kennedy Building, and obtaining advice regarding various issues.

The district court hearing regarding modification of the injunction on remand and Kennedy's motion for additional relief was set for September 4, 2007. On August 30, 2007, the Agency issued a letter approving CBS's Response Action Implementation Report with the addition of a "down-gradient monitoring well."

Kennedy contended that CBS's remedial action did not comply with the requirements in the Decision Document and asked the district court to impose additional requirements. Kennedy also moved the district court to increase the bond posted by CBS and to award Kennedy $59,448.61 in post-judgment response costs. The district court modified the injunction to impose no further requirements on CBS; declined to increase the amount of the bond; and denied Kennedy's motion for response costs. We affirm the district court as to the MERA injunction and bond issues. We remand for further proceedings on response costs.

II.

A.

Kennedy appeals the district court's modification of Paragraph 1 of the MERA injunction on remand to impose no further requirements on CBS, except those in Paragraphs 2 (testing-contingent remediation) and 3 (bond and redevelopment-contingent remediation), previously affirmed by this court.

At the outset, Kennedy argues that the district court did not comply with the appellate mandate when it failed to determine which of the Decision Document requirements further the purposes of MERA and independently evaluate CBS's performance of the applicable Decision Document requirements. In Kennedy II, we remanded the injunction to the district court to ensure that it specifically enumerated any requirements it placed on a party. 476 F.3d at 534. The district court's order did not set out detailed factual findings. Rather, it explicitly found only that CBS had "substantially performed the remediation requirements imposed upon it by the Minnesota Decision Document." We conclude that the district court's order is consistent with our mandate. See Duncan Energy Co. v. U.S. Forest Serv., 109 F.3d 497, 499 (8th Cir. 1997) (reviewing implementation of appellate mandate). Because the district court did not order any further relief, our mandate did not require detailed

findings.[4]  Although more detailed findings of fact would assist the parties and this court, the district court's findings were sufficient to provide a basis for its decision and permit our review.  See Swanson & Youngdale, Inc. v. Seagrave Corp., 561 F.2d 171, 173 (8th Cir. 1977) (detailed findings unnecessary when, inter alia, "record itself sufficiently informs the court of the basis for the trial court's decision") (internal quotation omitted); see also Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 759-60 (8th Cir. 1997) (district court may adopt rationale of prevailing party "by implication").

Next, Kennedy argues that the district court erred in determining that no further relief was necessary under Paragraph 1 of the injunction.  We review the district court's issuance of a permanent injunction for abuse of discretion.  United States v. Bailey, 571 F.3d 791, 804 (8th Cir. 2009).  "A district court abuses its discretion when it bases its decision on a legal error or a clearly erroneous finding of fact."  Id. (quoting Roach v. Stouffer, 560 F.3d 860, 863 (8th Cir. 2009) (in turn quoting Kennedy II, 476 F.3d at 533)).  "A factual finding supported by substantial evidence on the record is not clearly erroneous," Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1101 (8th Cir. 2006), even where we "would have viewed the evidence differently had [we] been sitting as the trier of fact."  Dixon v. Crete Med. Clinic, P.C., 498 F.3d 837, 847 (8th Cir. 2007).

There is substantial evidence in the record that CBS completed the remediation required by the Decision Document.  CBS's submissions to the Agency, the district court, and this court point to substantial record evidence that "all accessible and remotely accessible soils above contamination standards have been removed and

---

[4] Kennedy similarly makes much of Federal Rule of Civil Procedure 65(d)(1)'s requirements for specificity and detail.  However, as the district court's revision of the injunction did not require any new acts, such detailed findings and description were unnecessary.  See id. (requiring detail – and prohibiting incorporation by reference – when an "act . . . [is] restrained or required").

replaced with clean dirt and the parking surface was restored . . . ." Kennedy does not contest that CBS carried out these remedial actions in accordance with the Decision Document, nor that CBS repaved the parking lot. Rather, Kennedy makes specific contentions that certain aspects of the remediation were inadequate. For Kennedy to prevail, it must show that the district court clearly erred in rejecting its contentions that the buttresses and/or parking lot did not comply with the Decision Document and were necessary to protect the environment. See Kennedy I, 375 F.3d at 745 (purpose of injunction to protect Kennedy's rights if Agency "fail[ed] to devote the resources to see that [CBS] . . . performed").

First, Kennedy contends that the buttress system installed by CBS is a construction-related structure that must be removed under the terms of the Decision Document and poses a threat of contamination. Kennedy argues that CBS did not disclose the permanent installation of buttresses to the Agency and thus, no determination has been made as to whether they violate the terms of the Decision Document. The record reveals, however, that the buttresses are depicted in the exhibits to the Remedial Action Implementation Report submitted to the Agency and that the district court was clearly apprised of their existence. We are persuaded that the permanent installation of foundation support does not violate the terms of the Decision Document; for instance, the Decision Document discusses using grout, also a permanent installation, to stabilize the building as one of a non-exclusive list of options. We further conclude that substantial evidence supports the district court's determination that removal of the buttresses is not required by the Decision Document or by the goal of protecting natural resources. The record discloses measures taken to prevent PCB and cholorbenzene contamination of the buttresses, such as use and disposal of plastic lining, removal of all contaminated soil around the buttresses, and installation of clean fill. Despite Kennedy's expert testimony that contamination of the buttresses was "likely," it was not clearly erroneous to find that the protective measures were taken by CBS were sufficient. Finally, Kennedy's argument about the potential for future contamination at the time of buttress removal and disposal is

unavailing. Injunctive relief will not issue to "address speculative future harm." See E.E.O.C. v. HBE Corp., 135 F.3d 543, 558 (8th Cir. 1998).[5]

Second, Kennedy contends that CBS did not comply with the Decision Document requirements for restoring its parking lot, and argues that the current design, including permeable islands in the asphalt parking lot, poses a threat of pollution, impairment, or destruction to natural resources. Substantial evidence supports the district court's rejection of this factual contention. Although the Decision Document required CBS to reinstall asphalt, it noted that "the replacement of the asphalt surface is not an integral part of the remedial action; it is solely for the purpose of Site restoration." During the comment process, Kennedy expressed concern that poor maintenance of the asphalt and the inclusion of green space in the parking lot design created the risk that contamination would spread. The Agency considered Kennedy's comment and concluded that there was no significant risk of such migration and the monitoring requirements were sufficient to address any concerns, and reiterated its position that reinstallation of the asphalt was for restoration rather than remediation. Kennedy's complaints regarding the design of the parking lot, which was reconfigured to comply with City of Minneapolis permit requirements, show neither that CBS failed to comply with the Decision Document nor that the parking lot design endangers natural resources.

The district court did not clearly err in finding that CBS substantially complied with the Decision Document and rejecting Kennedy's proposed factual findings that the parking lot and buttresses endangered natural resources. Thus we find no error in

_____

[5] In its reply brief, Kennedy contends that it will incur costs during redevelopment due to site contamination. Removal of the buttresses may be considered such a cost. An action under MERLA is the appropriate way to recover response costs at that time. Kennedy has the benefit of a declaratory judgment establishing CBS's liability for all future response costs under Minn. Stat. § 115B.11, subd. 2. Thus, the district court did not err in rejecting its request for injunctive relief at this time.

the district court's conclusion that no further injunctive relief was necessary under Paragraph 1. MERA permits the court to impose equitable relief only if it is "necessary or appropriate to protect the air, water, land, or other natural resources located within the state from pollution, impairment, or destruction." Minn. Stat. § 116B.07.

The district court's modification of Paragraph 1 of the MERA injunction was not an abuse of discretion.

B.

Kennedy appeals the district court's denial of its motion to increase the bond posted by CBS to cover the cost of future remediation. Kennedy argues that the excavation conducted by CBS uncovered greater quantities of contaminated soil and greater concentration of contaminants than expected, resulting in higher than anticipated future remediation costs. Accordingly, it moved the district court to increase the bond amount imposed by the 2006 injunction, and affirmed in Kennedy II, from $1,311,000 to $3,378,972. The district court summarily denied Kennedy's motion. CBS urges us to affirm, arguing that Kennedy's proposed motion was outside the scope of remand from Kennedy II, and that Kennedy previously waived the issue. Further, CBS argues that there has been no change in circumstances that permits the district court to reconsider the amount of the bond.

To the extent that Kennedy argues that the district court could have revisited this issue under our Kennedy II remand, we review the scope of the mandate de novo. See Duncan Energy Co., 109 F.3d at 499. Otherwise, we review the district court's denial of a motion to modify a permanent injunction for abuse of discretion, unless denial is based on purely legal grounds which we review de novo. See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 364 (11th Cir. 1997) (modification of permanent injunction reviewed for abuse of discretion); Jones

-9-

v. Swanson (Swanson), 512 F.3d 1045, 1048 (8th Cir. 2008) (denial of Rule 60(b) motion generally reviewed for abuse of discretion; denial on purely legal grounds reviewed de novo). "[W]e may affirm the district court on any basis supported by the record." Jones v. United States (Jones), 255 F.3d 507, 511 (8th Cir. 2001) (quoting Gonzales-Perez v. Harper, 241 F.3d 633, 638 n.6 (8th Cir. 2001)).

In Kennedy II, we remanded the injunction to the district court for a modification of Paragraph 1 of the injunction, as discussed above. Although Kennedy's motion below to increase the bond was styled separately from its suggestions for modification on remand, Kennedy now appears to argue that the bond amount is within the scope of the remand because the purpose of the bond is "to ensure that the MERA injunction [is] properly implemented." Our remand in Kennedy II, however, did not instruct the district court to modify Paragraph 3 of the injunction, which ordered the bond, or the subsequent order setting the bond amount. Further, we limited the scope of the district court's modification of Paragraph 1 to "specify[ing] which requirements of the Decision Document" were to be included in the injunction. 476 F.3d at 536. As CBS points out, a bond requirement was not adopted in the Decision Document. We conclude that the bond amount is outside the scope of the remand, and thus the district court was without authority under the Kennedy II mandate to increase the bond. Cf. Bethea v. Levi Strauss & Co., 916 F.2d 453, 457 (8th Cir. 1990) (on remand district court "ha[s] no authority to grant . . . further relief" on issues not in front of appellate court).

Alternately, Kennedy argues that the district court should modify the bond amount in light of the soil conditions uncovered during CBS's implementation of the Plan. Kennedy does not specifically identify the legal basis for its motion, though it discusses both changed circumstances and newly discovered evidence as the factual bases for its motion. Kennedy does not, however, allege that the condition of the unremediated soil has actually changed since the amount of the bond was set, only that more accurate information is now available: "[Kennedy] contends that the greatly

-10-

increased contamination *discovered* during the remediation justified increasing the bond."[6] (Emphasis added). We therefore conclude that its motion is grounded on Federal Rule of Civil Procedure 60(b)(2), which permits relief from a final judgment when there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial . . . ." We assume but do not decide that Kennedy has made a sufficient showing of newly discovered evidence under Rule 60(b)(2).

Relief under Rule 60(b)(2), however, is limited by Rule 60(c)(1), which indicates that a Rule 60(b)(2) motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." The injunction ordering CBS to post a bond was initially entered on February 8, 2006, and the amount of the bond was set on April 21, 2006, which is the date of the final order for the purposes of Rule 60.[7] After our opinion was entered in Kennedy II, affirming this part of the injunction, Kennedy filed a motion to increase the bond amount on May 29, 2007. More than one year elapsed from the final entry of the district court's order until Kennedy's motion, and thus it is untimely. We therefore affirm the district court's

---

[6] Further, Kennedy has not alleged any exceptional circumstances that would render the amount of the bond inequitable. See generally Ass'n for Retarded Citizens of N.D. v. Sinner, 942 F.2d 1235, 1239 (8th Cir. 1991) ("a district court retains authority under Rule 60(b)(5) to modify or terminate a continuing, permanent injunction if the injunction has become illegal or changed circumstances have caused it to operate unjustly"); cf. Monsanto Co. v. Ruckelshaus, 753 F.2d 649, 653 (8th Cir. 1985) (court has inherent power to modify inequitable consent decree). Kennedy has not, for instance, alleged that denial of its motion to increase the bond will prevent it from obtaining full relief at the time of redevelopment. The purpose of the bond is simply to expedite further remediation; the amount is not a cap on CBS's obligation to clean up the Kennedy Building site.

[7] Once the amount of the bond was set on April 21, 2006, no further action was contemplated by the district court. Thus we treat it as a final order.

denial of the motion to increase the bond. See Swanson, 512 F.3d at 1049 (affirming denial of untimely Rule 60(b)(2) motion).

C.

Kennedy contends that the district court erred in denying its motion for $59,448.61 in response costs. The district court denied Kennedy's motion without elaboration, stating simply that "Plaintiff's motion [Docket No. 375] is denied." Kennedy contends that the district court incorrectly determined that the motion for response costs was outside the scope of remand. CBS urges us to affirm the district court's denial as a decision on the merits.

From the sparse record in front of us, we cannot determine whether the district court's opinion was procedural or substantive. At oral argument, the district court suggested that Kennedy was procedurally barred from recovering additional response costs. The district court also suggested that such a request was outside the scope of this court's mandate. While we will not divine the basis for the lower court's decision from its comments, they support the inference that the court may have ruled on procedural grounds. Further, in its brief below and here, CBS argues both that Kennedy's request for response costs was outside "the limited mandate from the Eighth Circuit" as well as that Kennedy's request should be denied on the merits. Thus, the district court may have denied Kennedy's motion on either the procedural or substantive grounds advanced by CBS. The district court's order does not resolve this ambiguity. The only explicit factual finding in the district court's order, that "CBS has substantially performed the remediation requirements," bears no logical relationship to Kennedy's request for response costs.

The district court was not foreclosed from entertaining Kennedy's claim for response costs. First, further response costs are not precluded by the 2002 award. On the contrary, at that time Kennedy won a declaratory judgment of liability against

-12-

CBS that is binding in subsequent actions to recover "all future reasonable and necessary costs." Minn. Stat. 115B.11, subd. 2(b). Second, the mandate in <u>Kennedy II</u> did not foreclose the district court from ruling on Kennedy's motion. <u>See</u> <u>United States Fid. & Guar. Co. v. Concrete Holding Co.</u>, 168 F.3d 340, 342 (8th Cir. 1999) (scope of mandate does not bar consideration of motion "not at issue at the time of the [previous] appeal"). Although CBS is correct that response costs are not a proper form of injunctive relief under MERA, Minn. Stat. § 116B.03, subd. 1; <u>Kennedy I</u>, 375 F.3d at 749 (money damages not available under MERA), the district court could have chosen to entertain Kennedy's 2007 MERLA claim as an exercise of its discretion.[8] <u>See</u> <u>Kinney v. Stoltz</u>, 327 F.3d 671, 673 n.4 (8th Cir. 2003) (district court may adjudicate "matters occurring after the original complaint is filed" if leave granted for supplemental pleadings under Federal Rule of Civil Procedure 15(d)).

Because the basis for the district court's decision is critical to the parties' rights going forward, we decline to rule on Kennedy's claim for response costs in the first instance. These are fact-intensive claims not appropriate for determination by the court of appeals. While the district court's legal conclusions as to the compensability of claimed response costs are reviewed de novo, <u>see</u> <u>Trimble v. Asarco, Inc.</u>, 232 F.3d 946, 956 (8th Cir. 2000) (citing with approval <u>Gussack Realty Co. v. Xerox Corp.</u>, 224 F.3d 85, 91 (2d Cir. 2000)), abrogated on other grounds by <u>Exxon Mobil Corp. v. Allapattah Servs, Inc.</u>, 545 U.S. 546 (2005), the court's factual determinations as to the amount of the response costs are reviewed deferentially. <u>See</u> <u>Gussack</u>, 224 F.3d at 91.

We remand to the district court for clarification and/or reconsideration of its order. <u>See</u> <u>Fogarty v. Piper</u>, 767 F.2d 513, 515 (8th Cir. 1985) (absence of findings of fact or conclusions of law may require remand). If the district court rules on

---

[8] While Kennedy did not style its motion under Rule 15, the district court may choose to treat it as such and entertain Kennedy's claims. Alternately, the district court may exercise its discretion to deny Kennedy leave to supplement the pleadings.

Kennedy's motion on the merits, we direct that the district court make the appropriate findings:

（1）Which, if any, of Kennedy's claimed response costs are compensable; and

（2）The amount of money damages, if any, to which Kennedy is entitled.

## III.

For the forgoing reasons, we affirm the order of the district court modifying the MERA injunction and denying Kennedy's motion to increase the bond. We remand this case for clarification of the district court's order denying Kennedy's request for response costs.

_____